## McLEOD et al. v. VENABLE et al., Appellants.

### Division One, June 12, 1901.

1. **Wife's Inherited Money:** DEED TO HER AND HUSBAND: ESTATE BY ENTIRETY: RESULTING TRUST. Where a wife, since the passage of the married woman's act of 1875, inherits money from her father or others, and it is used to buy land deeded to her and her husband, and she dies without issue before he does, he does not take the estate by the entirety as the survivor, for the deed did not create any such estate, but by that act the money or property inherited by her became her separate property, which the husband could not reduce to possession except by her written consent. In such case, she or her heirs are entitled to such proportion of the land as the amount of her money thus invested bears to the total amount paid for the land, and the court will decree a resulting trust to that effect, and partition the lands accordingly after her death, between her heirs and her husband.

2. ——: ——: POSSESSION OF HUSBAND. The evidence in this case is reviewed and it is *held* that there is nothing to indicate that the executor acted as the wife's agent in crediting the money inherited by the wife from her father's estate upon the note which was given in payment of the intestate's farm, but on the contrary, that it was done in accordance with the management of the property by the husband who was directed in the matter by the verbal wishes of his wife, and hence, there is nothing in the case to take it out of the rule announced in Jones v. Elkins, 143 Mo. 647, and Winn v. Riley, 151 Mo. 61, and nothing that invokes the rule of agency announced in Macfarland v. Heim, 127 Mo. 1.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* and *I. C. Dempsey* for appellants.

(1) "A conveyance of real estate in fee simple to husband and wife creates a tenancy by the entirety with the right of survivorship." Garner v. Jones, 52 Mo. 68; Beauchamp v. Shrader, 52 Mo. 72; Hall v. Stephens, 65 Mo. 670. (2) The married woman's act of 1875, now section 4340, Revised Statutes 1899, does not apply. Leete v. Bank, 115 Mo. 184; Leete v. Bank, 141 Mo. 574. We do not think the case of Winn v. Riley, 151 Mo. 61, the law in this case. (3) Even if the $1,200 was her separate estate, Mrs. Venable had the legal right to direct her agent how money should be invested. Leete v. Bank, 115 Mo. 203, 204. The evidence shows that her brother, George McLeod, invested this money in the way he did at her instance and at her request. (4) More than twenty years elapsed from the execution of the deed to the date of Jane Venable's death, during all which time she knew how the money had been invested. She took no steps to collect it from the executor as she could have done. Instead, she declined to make change in the deed, after being requested so to do by her husband. These plaintiffs are now estopped. Leete v. Bank, 115 Mo. 184. (5) Mrs. Venable, as to her separate equitable estate, had the right to direct her brother, Geo. McLoed, to invest her money in the land as was done. McFarland v. Heim, 127 Mo. 327; Blair v. Railroad, 89 Mo. 391; Turner v. Shaw, 96 Mo. 28.

*J. D. Hostetter* for respondents.

(1)    The points arising in this case have been very recently decided adversely to the contention of the appellant. Jones v. Elkins, 143 Mo. 647.    Where the separate money of the wife is invested in land by the husband without her written assent, and the legal title is taken to the husband and wife jointly, he holds that portion of the title so paid for by her separate means, in trust for her even though the arrangement is made with her full knowledge and acquiescence, and upon her death her heirs can hold the surviving husband likewise as a trustee.    The statement by appellant's counsel that the married woman's act of 1875 does not apply to the case at bar, is on a par with their other statement that Winn v. Riley, 151 Mo. 61, is not the law of this case.    It is immaterial when the marriage occurred, whether before or after the so-called married woman's enactment of 1875.    The question to be determined is, when did the right of action accrue to the wife?    Leete v. Bank, 115 Mo. 184, in no manner affects the case at bar. Winn v. Riley, 151 Mo. 61; Hurt v. Cook, 151 Mo. 431. (2)    Appellant's contention that no part of the $1,200 which came to Jane Venable from her father's estate ever passed through the hands of Richard C. Venable, her husband, is without merit, and only renders his position more untenable, because, not having come into his possession or under his control, the husband could not have acquired any title to it even under the law as it existed prior to 1875.

MARSHALL, J.—This is a proceeding in equity to declare a resulting trust in and for a partition of the northwest quarter of section fifteen in township fifty-three, range one west, in Pike county.    The plaintiffs are a part of the heirs at law of Jane Venable, and the defendants are the husband and remaining heirs of Jane Venable.

Jane Venable was a daughter of William McLeod.    She

married Richard C. Venable on the eleventh of October, 1865. Her father, William McLeod, died March 13, 1876, seized of the land described above. During the course of administration of his estate said land was ordered sold, and Jane Venable and Richard C. Venable became the purchasers thereof at such sale, on July 10, 1876, at its appraised price of $4,912. In payment therefor they executed their two notes for $2,270 and $2,640, respectively, of date July 10, 1876. Jane Venable's distributive share of her father's estate amounted to $1,200. The executor credited this amount upon said notes on July 12, 1876, and the balance due thereon, $3,712, was paid by the husband, Richard C. Venable, out of money earned by the joint labors of himself and wife. The deed to the land was made to Jane Venable and Richard C. Venable. Thus the title remained until January 24, 1897, when Jane Venable died, intestate, without issue, and leaving neither father nor mother surviving her. Thereupon this action was instituted, for the purposes stated. All the parties hereto, except Richard C. Venable, are the surviving collateral heirs of Jane Venable, her brothers and sisters and their descendants. The trial court found and decreed that Jane Venable owned an interest in the land in the proportion of 1200 to 4912, or 75-307ths, and that upon her death one-half of her interest rested in her husband and the other half in her collateral heirs, divested title out of Richard C. Venable as to that portion, decreed partition and ordered the land to be sold and the proceeds distributed in such proportion. From this decree Richard C. Venable has perfected this appeal.

## I.

Defendant, Richard C. Venable, contends that he and his wife, Jane, were seized of the premises by the entirety and that

upon the death of his wife, he became entitled to the whole estate.

This contention is based, principally, upon the rule announced in Garner v. Jones, 52 Mo. l. c. 71, as follows:

"At common law a conveyance in fee to husband and wife, of real estate, created a tenancy by the entirety. Being but one person in law, they took the estate as one person. Each being the owner of the entire estate; neither of whom had any separate or joint interest but a unity or entirety of the whole. So, if either died the estate continued in the survivor, as it had existed before; an undivided unity or entirety. There was no survivorship as in joint tenancies, but a continuance of the estate in the survivor as it originally stood. The only change by death was in the person, not in the estate. Before death they both constituted one person holding the entire estate, and after the death of either, the survivor remained as the only holder of the estate. This principle was introduced into this State as a part of the common law and it has not been altered by our statute of conveyances. [See Gibson v. Zimmermann, 12 Mo. 385.] It is also the settled law of most of the States of the Union where it has not been changed by statute. [Tyler on Infancy and Coverture, 498; Lux v. Hoff, 47 Ills. 425.]"

Defendant, however, overlooks what was further said in that case, as follows: "It may be conceded that if a husband invests the separate funds of his wife in real estate and takes a deed to them jointly, a court of equity would protect her in the enjoyment of the property and declare a trust in her favor. But no such point arises in this case." [Ibid. l. c. 72.]

In the case at bar, however, while it is true that Richard and Jane were married prior to the passage of the Act of 1875, and therefore the husband had a vested right to reduce the choses-of action of the wife to possession at any time during

the coverture, which right could not be taken away from him by that act (Leete v. Bank, 115 Mo. 184; Idem, 141 Mo. 574), nevertheless, the wife Jane had no choses of action—or at any rate not the choses in action which were invested in this land—prior to 1875, and therefore Leete v. Bank, supra, has no application to this case.

The wife's distributive share in her father's estate did not accrue to her until the death of her father in 1876, and at that time, by the express provisions of the Act of 1875 it became her separate property, which her husband could not reduce to possession without her written consent, which was not given in this case. Since the passage of that act, if a husband obtains possession of his wife's personal property, without such written consent, and invests it, together with money of his own, in land and takes the title in their joint names, she or his heirs will be entitled to the proportion of the land that the amount of her money thus invested bears to the total amount paid for the land. [Jones v. Elkins, 143 Mo. 647; Winn v. Riley, 151 Mo. 61.] And a court of equity will declare a resulting trust in her favor in the land to that extent. Under such circumstances the estate is not one by the entirety and the husband does not take the whole upon the death of the wife.

## II.

But defendant, Richard C. Venable, contends further that Jones v. Elkins and Winn v. Riley, supra, do not apply to this case, because he did not reduce his wife's share of her father's estate to his possession without her written consent and invest it in this land, nor did he ever have possession of his wife's said personal chattels, but that her brother, the executor of her father's estate, by her direction, applied her said share to the part payment of their joint notes, and that such

share being her separate estate, she had a right to appoint her brother her agent to so apply her share, under the rule announced in Macfarland v. Heim, 127 Mo. l. c. 335, and that she thus created an estate by the entirety, which she refused to divide between them, when he requested her to do so, during her lifetime, and therefore he is now seized of the whole estate.

Richard C. Venable was the only witness in the case. The plaintiffs introduced his deposition, which they had taken, as an admission, and he was allowed to testify in his own behalf, without objection. His version of the matter is this: his wife's father permitted them to live on the place for seven years before his death and to take the issues and profits arising from it in consideration of their taking care of him. He and his wife both worked, she sold chickens and eggs, and a hog and a cow, and every nickel they got they laid aside with the avowed purpose of using it towards buying the place when her father died, and it was so used, together with the $1,200 which she inherited from her father's estate. As to what happened in reference to investing her $1,200 in the land, Richard C. Venable testified as follows:

"Q. You say she inherited from the estate between $1,200 and $1,300? A. Yes, sir.

"Q. At the time of the purchase or just before it was arranged between you and your wife to buy the home farm? A. Yes, sir, a portion of it at least. We did buy it all. We made that agreement. We could not live where we were.

"Q. Now, then, when you bought the place she agreed to and told you to use her money? A. Yes, sir.

"Q. With yours in paying for the place? A. Yes, sir.

"Q. Now, then, the place was purchased from George McLeod as executor of his father's estate? A. Yes, sir.

"Q. You attended to all the matters? A. Yes, sir.

"Q. When the deed was made did you or your wife have anything to do with it so far as you know? A. No, sir.

"Q. As to how it should be made? A. No, sir.

"Q. Did you ever suggest to Mr. McLeod as to how to make the deed? A. No, sir; he wrote the deed himself and I did not know what was in it until he read it to me, in fact not having a very good education, my father died when I was just a small child.

"Q. You accepted the deed in the manner in which Mr. McLeod had written it up and had it recorded? A. Had it recorded the same day.

"Q. Did you take it home and show it to your wife? A. Yes, sir.

"Q. She read it? A. Yes, sir.

"Q. And she was perfectly satisfied with the way it was written? A. Yes, sir.

"Q. And you retained it just that way all the time? A. Yes, sir.

"Q. Never changed it a particle, knowing that she had $1,300 or about that in the place; did you ever suggest to her that you would deed her a part of the land, deed her one eighty? A. Yes, sir.

"Q. And she made a deed to you for the balance? A. Yes, sir.

"Q. What did she say with reference to that? A. She said she would not do that. She was perfectly satisfied for it to remain the way it was.

"Q. And from that day to this it has remained that way? A. Yes, sir.

"Q. If I understand you rightly, all that she ever put in the place was the sum of money derived from her father's estate, that you think was between twelve and thirteen hundred dollars? A. Yes, sir.

"Q. All the balance of the purchase money you paid yourself out of money that you had earned? A. Yes, sir.

"Q. These are the facts? A. Yes, sir."

Richard, also testified that no part of the $1,200 ever passed through his hands, but that two days after he and his wife had purchased the land and given their joint notes for it, her brother, the executor of her father's estate, applied the $1,200 to the part payment of the note for $2,640. But a careful examination of the record fails to disclose a single word of evidence that she directed her brother to so apply her share or in any manner constituted him her agent to do so. On the contrary, the testimony of her husband, above quoted, stands uncontradicted, and is to the effect that he attended to the whole matter for her as well as for himself, and that she *told* him to use her share of her father's estate to pay for the land, and that she never gave any direction to any one as to how the deed should be made and never saw the deed until after it was made, executed and recorded, when she said she was perfectly satisfied to let it remain in that shape.

Upon such testimony it can not be said that there is any substantial testimony to rest defendant's contention upon, that Mrs. Venable appointed her brother to apply her share of her father's estate in that way, but the conclusion is irresistible that she verbally authorized her husband to use it in that way and he directed her brother to so apply it. So that it is the same thing as if he had collected the money from the executor and applied it himself. And this brings this case squarely within the rule announced in Jones v. Elkins, 143 Mo. 647, and results in necessarily holding that the trial court was right in declaring a resulting trust in favor of her heirs in the proportion of $1,200 to $3,712.

Neither can it be said that although she did not direct the deed to be made in this manner, nevertheless she ratified it

McLeod v. Venable.

after it was made so as to create an estate by the entirety. True, being her separate property, she could ratify the unauthorized act of her brother, and it would have the same legal effect as if it had been authorized, but it does not follow that under the circumstances herein stated she necessarily intended thereby to create an estate by the entirety. Her conduct is as consistent with an intention that she should have an equitable estate to the extent of her $1,200 so invested as it is that she intended to create an estate by the entirety.

In fact, it is more reasonable to so construe her actions. She is charged with knowledge of the law, and hence is as conclusively presumed to have known the rule announced in Jones v. Elkins, 143 Mo. 647, as she is to have known that laid down in Garner v. Jones, 52 Mo. 68. Indeed it must be held that she knew that under the facts of this case, the $1,200 was her separate property and accrued to her after the passage of the Act of 1875, and that it was invested in this land, in their joint names, by her husband, without her written consent, and hence under the rule announced in Jones v. Elkins, as well as under the exception to the common-law rule announced distinctly in Garner v. Jones, she had a trust estate in the land in the proportion of $1,200 to $3,712 which a court of equity would protect, and therefore there was no necessity for a severance of her interests from her husband's.

The trial court took this view and decreed her interest in that way, and then gave her husband one-half of her interest, the whole of his own, and divided the other half of her interest among her collateral heirs. This was even more favorable to him than he had a right to ask, for it left out of consideration her interest in the $3,712, which was earned by their joint labors and by the sale of her chickens, eggs, hog and cow. But as that interest may have come to her before

Vol 163 mo—35

the passage of the Act of 1875, and been reduced to possession by the husband, and hence would be governed by Leete v. Bank, supra, and as her heirs submitted to the judgment of the court in this regard, it is not open to review in this court.

The judgment of the circuit court is right and is affirmed. All concur.