WILLIAM H. DONOVAN and CARRIE I. BOYD, by Her Next Friend, JAMES W. BOYD, Appellants, v. JAMES R. GRIFFITH, Appellant.

**Division Two, December 15, 1908.**

1. **CURTESY: Wife's Equitable Estate: Seizin.** The husband is entitled to curtesy in lands in which the wife has an equitable estate, if the other conditions to create the curtesy are present. If the lands were purchased with her money and deeded to him, the equitable title was in her, and his seizin was her seizin.

2. ————: Seizin After Death of Child. Where a child was born alive of the marriage and died before the land purchased with the wife's money was deeded to the husband, he has curtesy in the land. The fact that the child died before the land was acquired, does not affect his curtesy interest therein. If seizin occurs any time within the marriage, and a child is born and dies before or after seizin, the husband has curtesy in the wife's lands.

3. ESTATE BY ENTIRETY. In equity a conveyance conveying land to the husband and wife jointly does not create an estate by the entirety, if the land was paid for in part with the money of the wife, without her consent in writing that the husband so use it. But even after her death her heirs have a trust estate in the land in proportion to the amount contributed by her to the whole amount of the purchase money.

4. RENTS: Wife's Land: Joint Use. Where the husband and wife lived in harmony as man and wife and jointly used or enjoyed the lands which had been conveyed to them jointly and which, because of the fact that her money was used without her consent to pay for them, did not create an estate by the entirety, her heirs after her death, there being no contract for rents while she lived, are not entitled to recover rents from him on her aliquot part for the time between the date of the conveyance and her death.

5. ————: ————: ————: Married Woman's Acts: Implication of Contract. The Married Woman's Acts dissolved the unity of husband and wife as to their property rights designated therein, and gave to each full power to contract with each other in respect to such property rights. But the law will not imply that any contract existed between them as to the use of their joint property or as to the payment of rents by him upon her interest therein, if they were living together in harmony with due consideration of their marital relationship; and in the absence of such a contract, before the husband, at the suit of the wife's heirs, should be charged with rents for the use of her aliquot part of the lands, it should be made to appear that the wife had been denied the control of her interest in the joint estate and had also been denied the payment of rents which may have accrued from the premises.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

REMANDED (*with directions*).

*Hostetter & Jones* for plaintiffs-appellants.

(1)   Where the separate means of the wife are invested in land by the husband without her written assent, the title is held by him in trust for the wife, and at her death for her legal heirs, to the extent which her separate means contributed to the purchase price. McLeod v. Venable, 163 Mo. 536; Jones v. Elkins, 143 Mo. 647; Winn v. Riley, 151 Mo. 61; Hurt v. Cook, 151 Mo. 431; Scrutchfield v. Sauter, 119 Mo. 615; Seay v. Hesse, 123 Mo. 450; Hardware Co. v. Horn, 146 Mo. 129; Johnston v. Johnston, 173 Mo. 115.   (2) The wife, and her heirs when she is dead, can hold the husband liable for conversion of her rents, issues and products arising from her real estate.   Gordon v. Gordon, 183 Mo. 294; Miller v. Slupskey, 158 Mo. 643; Woodward v. Woodward, 148 Mo. 241.   This is true even though the husband has curtesy initiate in the land.   Woodward v. Woodward, supra.   (3)   The widower's statutory right to inherit one-half of his wife's real estate under the conditions set out in section 2938, Revised Statutes 1899, abrogated his common law estate of curtesy, as the two estates are inconsistent.   Where the reason of a rule of common law ceases to exist the rule itself ceases also.   Taylor v. Pullen, 152 Mo. 434.   Besides, the necessary requisites do not exist so as to give the husband a curtesy interest, particularly as to the "Thornton forty." The entire legal title to the "Thornton forty" was in the husband, consequently the wife never had seizin, which was always an essential to curtesy estate.   12 Cyc. 1002.   As to the "Pritchett forty" we contend that as the deed was made to husband and wife, which ordinarily was an estate by the entirety at common law, it was no such a title as the husband's curtesy estate could attach.   At common law such an estate was one by entirety, and if the wife died first, her surviving husband would take not a curtesy consummate, even

though all the other requisites should exist, but he would become invested with the entire fee. In other words, the survivor took the entire title. Cases cited first above. Curtesy at common law could only exist in real estate which lawful issue of the wife born alive was, or might be, capable of inheriting. Myers v. Hansbrough, 202 Mo. 495. Real estate held by a deed to husband and wife was not inheritable by the wife's issue, because upon her death the surviving husband took the entire fee and nothing descended to her heirs. Measured by common-law rules the husband had no curtesy in the "Pritchett forty" and of course our Missouri statutes do not create any curtesy interest. The right to the curtesy estate in Missouri is not given by statute but exists solely because it was a common-law rule and one which has not been abolished by statute.

*Ball & Sparrow* for defendant-appellant.

Neither the Pritchett forty nor the Thornton forty-acre tracts are subject to partition under the facts in this case, and the court should have so declared the law. (1) Because defendant inherited one-half of his wife's interest in the money invested, and the other he owns as tenant by curtesy. Woodward v. Woodward, 148 Mo. 241; Tremel v. Kleiboldt, 75 Mo. 255; McBreen v. McBreen, 154 Mo. 323; Solton v. Solton, 93 Mo. 307; Alexander v. Warraner, 17 Mo. 228; O'Brien v. Ash, 169 Mo. 283; Hays v. McReynolds, 144 Mo. 348; Myers v. Hansbrough, 202 Mo. 495. (2) The Pritchett forty acres were purchased January 28, 1899, and the deed made to James R. Griffith and Leona Griffith, his wife. Therefore, a deed by entirety, and upon the death of Leona Griffith, defendant became the absolute owner in fee of said forty acres. Garner v. Jones, 52 Mo. 68; Hall v. Stephens, 65 Mo. 670. (3) The general warranty deed from Pritchett being

to defendant and Leona, his wife, under the law defendant could not be charged with rent. She had possession and was entitled to the rents and profits. No proof that she did not receive it; the burden was on plaintiffs to prove that she did not. R. S. 1899, sec. 4340. (4) If defendant purchased the said Pritchett land and invested his wife's money as her agent, and as she directed, then the plaintiffs cannot recover so far as that tract is concerned. Leete v. Bank, 115 Mo. 203. (5) As a matter of law, the same is true as to the land purchased of Donovan. (6) If plaintiffs have any claim to rents, because of the $650 invested in the Pritchett tract of land, they should have pressed their claim in another way and in another forum, and not by partition.

FOX, P. J.—This cause is here upon appeal by both parties from a judgment and decree of the circuit court of Pike county.

This is a proceeding by which it is sought to declare that certain undivided portions of certain lands are held in trust by defendant for the plaintiffs, and after the ascertainment of the interests of the parties in this land to partition the same in accordance with the laws of this State. There are two forty-acre tracts of land, situated in Pike county, Missouri, which are involved in this proceeding. One is known as the Pritchett forty and the other as the Thornton forty, so called from the respective names of the grantors. Leona Griffith was the wife of the defendant, James R. Griffith. They were married on January 30, 1895, and on January 4, 1900, a child was born of this marriage. This child died on October 15, 1903. Leona Griffith, the wife of the defendant, and the mother of the deceased child, died April 9, 1904. She died intestate and left no debts. The only heirs at law surviving Leona Griffith was her husband, James R. Grif-

fith, the defendant herein, William H. Donovan, her brother, and Carrie I. Boyd, her half-sister, both of whom are plaintiffs in this cause. The petition described the land in controversy and averred that the wife, Leona Griffith, furnished the entire purchase price of each forty acres out of her own separate money and means.

Upon this state of facts the chancellor was asked to declare that the defendant, James R. Griffith, held the legal title to said lands as trustee for the wife, and since her death as trustee for her heirs at law, the plaintiffs in this cause. The interests of the parties in said real estate were alleged in the petition to be as follows, that is to say, William H. Donovan, one-third; Carrie I. Boyd, one-sixth; and James R. Griffith, one-half. From the allegations in the petition it was further sought to charge the interest of James R. Griffith with certain rents arising from said lands, which he had received from the date of the acquisition of title, which it is averred, belonged to his wife, and was converted by him to his own use.

The answer of the defendant, James R. Griffith, admitted that Leona Griffith, the wife of the defendant, died intestate in Pike county, Missouri, on the 9th day of April, 1904. He also admitted that by and through his deceased wife, Leona Griffith, he received and invested in the lands described in plaintiff's petition the sum of nine hundred and twenty-five dollars, and no more. Further answering the defendant says: "That there was born during the marriage of himself and deceased wife, Leona Griffith, one child, named —— Griffith, and that said child died on the — day of —.—, 1904; therefore, defendant says that he has a curtesy interest, or life estate, in the remaining one-half of the land so purchased as aforesaid with the money of his deceased wife, Leona Griffith, and therefore denies the right of plaintiff to partition the lands

in question. Further answering, he says that he invested the money of his wife as her agent and as she directed. Defendant further answering, denies each and every allegation, statement and charge made by plaintiffs' petition, not hereinbefore admitted to be true, and now having fully answered, asks to be discharged with his costs.''

Plaintiffs' reply was a general denial of the new matter contained in defendant's answer.

Testimony was introduced by both plaintiffs and defendant upon the issues presented and the court, at the close of the testimony, took the case under advisement, and subsequently made a special finding of facts and entered its decree, which finding of facts and decree were as follows:

''Now at this day again come the parties to the above-entitled cause, plaintiffs appearing by Hostetter & Jones, their attorneys, and the defendant appearing by Ball & Sparrow, his attorneys, and the court having had this cause under advisement since the hearing of the testimony and the submission of the same on a former day of this term of court and after the argument of counsel and being fully advised in the premises makes the following written finding of facts and conclusions of law which are as follows, to-wit:

''Finding in reference to Pritchett forty, defendant owns ten twenty-thirds in his own right, defendant owns thirteen forty-sixths by inheritance from his wife, defendant owns curtesy in thirteen forty-sixths, defendant owes estate of deceased wife one-half rental value of thirteen twenty-thirds of wife's share for five years, i. e., one-half of $276.90, to-wit, $138.45. That on the date of the death of the Mrs. Griffith defendant was indebted to her on account of said rental value in the sum of $276.90. That one-half thereof, viz., $138.45, became the property of defendant by inheritance from his deceased wife. This leaves the sum

of $138.45, for which as trustee of his wife's interest in said land the defendant should account and his marital interest acquired from his wife in said lands should be and is charged with the repayment of said sum of $138.45. That the plaintiffs, Wm. H. Donovan and Carrie I. Boyd, as the sole surviving (collateral) heirs of said Leona Griffith are entitled to have and receive from defendant before he receives any part of the sum that may be realized from the sale of said Pritchett lands belonging to said Leona Griffith said sum of $138.45, said Donovan being entitled to two-thirds thereof, i. e., $92.30, and Carrie Boyd to one-third thereof, i. e., $46.15. That the interest of the respective parties in said Pritchett lands is as follows: Defendant is owner in his own right of a ten twenty-thirds interest in said lands; defendant is the owner, by inheritance, from his wife, of a thirteen forty-sixths interest in said lands subject to said charge of $138.45; said defendant is the owner of a curtesy estate in thirteen forty-sixths interest in said lands; said Donovan is the owner, subject to defendant's said curtesy estate, of a thirteen-sixty-ninths interest in said lands. Said Carrie Boyd is the owner, subject to said curtesy estate, of a thirteen one hundred and thirty-eighths interest in said land.

"That in purchasing the Thornton forty-acre tract for $1,100, defendant invested $275 of his wife's money in said purchase and defendant by reason thereof held the legal title to one-fourth thereof in trust for his wife, Leona. Defendant is the owner in his own right of an undivided three-fourths interest in the Thornton forty acres. Defendant is the owner by inheritance from his wife of an undivided one-eighth interest in said land.

"Decree of partition, order of sale of said land by sheriff at public sale to highest bidder for cash in hand at regular October term, 1904, of this court. Said

tracts to be sold separately. In case the full amount of said charge of $138.45 shall not be realized from the sale of defendant's interest in the Pritchett forty, the remaining balance shall be deducted from the proceeds of defendant's interest inherited from his wife in the Thornton forty and paid to said Donovan and to Carrie Boyd's guardian in the respective proportion aforesaid. The court doth further find that Leona Griffith was the wife of Jas. R. Griffith and that she died intestate at the county of Pike and State of Missouri on the — day of April, 1904, without issue and without any father or mother surviving her and leaving as her sole heirs at law her husband Jas. R. Griffith, defendant herein, and her brother, Wm. H. Donovan, plaintiff herein, and her sister of the half-blood, Carrie I. Boyd, also a plaintiff herein.

"The court further finds that during the coverture there was born to said Leona Griffith and her husband, Jas. R. Griffith, a child which lived for some months, but died prior to the death of said Leona Griffith.

"The court further finds that during the coverture Mary E. Pritchett and S. A. Pritchett, her husband, conveyed to the said Jas. R. Griffith and Leona Griffith, his wife, by proper and suitable deed of conveyance, the title to the following described real estate, situated in Pike county, Missouri, to-wit: Beginning at a corner-stone from which a pin oak twenty inches in diameter bears north 36 degrees, east 3.35 chains, the same being the southwest corner of S. A. Pritchett's land; thence south 13.04 chains to Mrs. Sallie Porter's land; thence east with Mrs. Porter's north line 33.50 chains to Salt River; thence north with the meanderings of Salt River to the southeast corner of S. A. Pritchett's land; thence west with Pritchett's south line 27.90 chains to place of beginning, containing in all forty acres, more or less, and all being in section fourteen, township fifty-five north, range 3 west, said deed

of conveyance being recorded in Book 113, at page 567, of the deed records of Pike county, Missouri. The court finds that during said coverture the defendant, Jas. R. Griffith, acquired by a proper deed of conveyance from Ella Thornton and others the legal title to the following described real estate, also situated in Pike county, Missouri, to-wit: The northwest quarter of the southwest quarter of section fourteen in township 55, range 3 west, containing forty acres, more or less.

"The court further finds that in the purchase of the first named forty acres, which was acquired from Mary E. Pritchett and husband, the defendant contributed ten-twenty-thirds of the purchase money, and that thirteen-twenty-thirds was the separate money and means of his wife, Leona Griffith, and that in the purchase of the last named forty acres which was acquired from Ella Thornton et al., defendant contributed three-fourths of the purchase money and the remaining one-fourth was the separate money and means of his wife, Leona Griffith.

"The court further finds that upon the acquisition of the title to said Thornton forty acres the defendant, James R. Griffith, held the legal title to an undivided one-fourth interest therein in trust for his said wife, Leona Griffith, and that upon the death of said Leona Griffith he holds the legal title to that portion of the Pritchett forty acres, which was paid for by her separate money and means in trust for the heirs of his said wife subject to his own right of inheritance and the marital interests therein, and that he now holds the legal title to one-fourth interest in the Thornton forty acres in trust for the heirs of said deceased wife subject to his own interest by inheritance and to his marital interests therein, and it is ordered and decreed by the court that that portion of the title to each of the forty-acre tracts above mentioned now held in

trust by the defendant, James R. Griffith, for the plaintiffs, Wm. H. Donovan and Carrie I. Boyd, be and the same is hereby divested out of the defendant and vested in the plaintiffs. In accordance with the written findings made by the court and filed in this cause and set out hereinbefore in this decree it is considered and adjudged by the court that the said lands are not susceptible of division in kind and the same are hereby ordered sold by the sheriff of Pike county, at public sale, to the highest bidder for cash in hand at the next regular October term, 1904, of this court, in accordance with the statute governing sales of real estate in partition. It is further considered and adjudged by the court that said tracts be sold separately and that in case the full amount of the said charge $138.45 shall not be realized from the proceeds of the sale of the said Jas. R. Griffith's interest in the forty acres acquired from Mary E. Pritchett et al., the remaining balance of such charge shall be deducted from the proceeds of the sale of the defendant Jas. R. Griffith's interest inherited from his wife in the said Thornton forty acres, and shall be paid to the plaintiffs in the respective portions as hereinbefore found and adjudicated, and it is further ordered by the court that the sheriff make report of his proceedings under this order as soon as the sale had thereunder shall be consummated and that no distribution be made by said sheriff until further order of this court, and it is further ordered that this cause be and the same is hereby continued.'' To which action of the court plaintiffs and defendant excepted at the time and saved their exceptions.

There is little or no dispute as to the facts developed upon the trial of this cause, and it is sufficient to say that the testimony introduced furnished ample support to the finding of the trial court, with the exception of that portion of its finding concerning the

charge sought to be made upon the interests of the defendant in the land involved as to rents. We do not deem it necessary to set out in detail the testimony of the witnesses in this cause, but will further refer to the general tendency of the testimony during the course of the opinion.

Both plaintiffs and defendant preserved their exceptions to the action of the court in its finding of facts and the decree rendered, and on October 20, 1904, both plaintiffs and defendant filed their motions for a new trial, which were by the court overruled, and this appeal was prosecuted by both sides from the finding and decree rendered by the trial court to the Supreme Court, and the record is now before us for consideration.

## OPINION.

The record discloses that the complaint of the plaintiffs is solely directed to the recognition by the trial court of an estate by the curtesy in the defendant, James R. Griffith, in the aliquot parts of the respective tracts designated in the special findings of the court. The errors complained of on the part of the defendant-appellant challenge the correctness of practically all the findings of the court and its decree ordering a partition of the land involved in this proceeding.

We will first direct our attention to the complaint of the plaintiffs, who are appellants also in this case, respecting the recognition given by the court to the estate of curtesy claimed by the defendant. The testimony as disclosed by the record applicable to this proposition shows that the Thornton forty-acre tract of land was conveyed to James R. Griffith alone on February 20, 1904, which was shortly after the death of their only child.

I.

It is insisted that, the entire legal title to the Thornton forty having been conveyed to the husband, James R. Griffith, the defendant in this cause, the wife, Leona Griffith, was never seized of that forty, and that seizin was always essential to establish curtesy. It is sufficient to say upon that proposition that learned counsel for the plaintiffs overlook the question that the wife was seized of an equitable estate. Certainly that will not be disputed by the plaintiffs, for the reason that the very foundation of this action, in which it is sought to have the chancellor declare that the legal title to this forty acres should be held in trust for the wife, and she being dead in trust for the plaintiffs to this action, fully recognizes that the wife did have in this forty acres, at the time of her death, an equitable estate, otherwise the plaintiffs would have no standing in this court. Their right to successfully maintain this action is predicated upon the theory that the wife, at the time of her death, was in equity entitled to certain interests in the lands involved in this controversy.

The facts developed upon the trial of this cause and the finding of the trial court indicate very clearly that the wife was entitled in equity to certain portions of the lands involved in this controversy, and that it was the equitable separate estate of the wife and that she died seized of that equitable estate.

In Woodward v. Woodward, 148 Mo. l. c. 247, speaking through Judge GANTT, it was said: "It is also well-settled law in Missouri that a husband is entitled to curtesy in the equitable separate estate of the wife, of which she died seized, although limited to her separate use," citing, in support of the doctrine, Alexander v. Warrance, 17 Mo. 228; Tremmel

v. Kleiboldt, 75 Mo. 255; Soltan v. Soltan, 93 Mo. 307.

In Myers v. Hansbrough, 202 Mo. 495, it was expressly ruled that the Married Woman's Statute, section 4340, Revised Statutes 1899, which is the same as section 6869, Revised Statutes 1889, did not further impair the rights of the husband's estate by the curtesy in land held by the wife as her separate equitable estate than to take away from the husband his common-law right to the possession and usufruct of the land during the life of the wife.

Applying the doctrine as announced in the cases above indicated, it is clear that the law is well settled in this State that a husband is entitled to curtesy in the equitable separate estate of the wife, and the provisions of section 4340, which is denominated the Married Woman's Statute, has in no way changed the rights of the husband other than to the extent as heretofore indicated.

It is also suggested by counsel for plaintiffs that curtesy at common law could only exist in real estate which lawful issue of the wife born alive was or might be capable of inheriting.

If this suggestion is to be taken as a contention on the part of the plaintiffs that the Thornton forty-acre tract was not acquired until after the death of the child of the wife of the defendant, James R. Griffith, therefore there was no issue of the wife born alive after the acquiring of this Thornton forty acres, and as to that there could be no estate by the curtesy in the husband, we have no hesitation in saying that we are unwilling to give our assent to such contention.

Curtesy is defined by the leading authors as "the estate to which by common law a man is entitled on the death of his wife, in the lands or tenements of which she was seized in possession in fee simple or in tail during their coverture, provided they had law-

ful issue born alive which might have been capable of inheriting the estate. It is a freehold estate in the husband for his natural life cast upon him by operation of law immediately upon the happening of the necessary incidents.'' [12 Cyc. 1002.]

Lord COKE says of this subject, that the four essential things necessary to constitute an estate of tenancy by the curtesy, are first, marriage; second, seizin of the wife; third, issue born alive; fourth, death of the wife. He said, however, ''But it is not requisite that these should occur together all at one time. And, therefore, if a man taketh a woman seized of lands in fee, and is disseized, and then have issue, and the wife die, he shall enter and hold by the curtesy. So, *if he hath issue which dieth before the descent,* as aforesaid.''

Chancellor KENT, in his Commentaries, stated the doctrine as applicable to the tenancy by the curtesy in this language: ''Tenancy by the curtesy is an estate for life, created by the act of the law. When a man marries a woman, seized, at any time during the coverture, of an estate of inheritance, in severalty, in coparcenary or in common, and hath issue by her born alive, and *which might by possibility inherit the same estate* as heir to the wife, and the wife dies in the lifetime of the husband, he holds the land during his life, by the curtesy of England; and *it is immaterial whether the issue be living at the time of the seizin,* or the death of the wife, or whether it was born before or after the seizin.'' [4 Kent (14 Ed.), 27.]

In Templeton v. Twitty, 88 Tenn. 595, the precise question under discussion in the case at bar was passed upon and thoroughly discussed, and all the authorities reviewed. The facts as applicable to that case, from which the legal propositions arose, were as follows: ''During the coverture P. L. and Eveline A. Twitty had two children born unto them—a boy and a girl,

the former dying July 17, 1857, at the age of about four years, and the latter dying August 4, 1857, at the age of about three years. Both children were born and died before their mother acquired any land; and, for this reason, it is said that their father could not have taken an estate as tenant by the curtesy. In other words, the contention in behalf of defendants is that because the wife's seizin did not commence until after the death of her children there was no right of curtesy in her husband.'' The Tennessee Supreme Court, in responding to the contention of the defendant in that case, speaking through CALDWELL, J., said: ''All the authorities of which we have any knowledge are contrary to this contention. Whether seizin arose before or after the death of the child is an unimportant circumstance. If there was a child which by possibility might have inherited the land from the mother— a child to whom the land would have descended had it survived the mother—that is all that is required as to issue, and the father takes an estate for life as tenant by the curtesy.''

In 1 Cruise Dig., 147, sec. 7, the rule applicable to this subject was thus stated: ''The time when the seizin commences, whether before or after issue had, is immaterial; for if a man marries a woman seized in fee, is disseized, and then has issue, and the wife dies, he shall enter and hold by the curtesy. So, if he has issue *which dies before the descent of the lands on the wife.''*

The distinguished American author, Mr. Washburn, on Real Property (4 Ed.), vol. 1, pp. 178 and 179, section 45, very clearly states the rule as applicable to this proposition: ''It is immaterial whether the child is born before or after the wife acquires her estate, *if, had it lived, it would have inherited that estate; and it matters not though it die before she*

*acquires the estate,* so far as the husband's right to curtesy is concerned."

Judge CALDWELL, in the Tennessee case, directs attention to the celebrated case of Jackson v. Johnson, 5 Cowen 102, in which Chief Justice SAVAGE, in treating of this question, says: "It is immaterial at what period during coverture the wife became seized, whether before issue or after; *nor is it material whether the issue be living at the time of the seizin."*

In Heath and Wife v. White, 5 Conn. 228, the subject of tenancy by the curtesy was thoroughly considered and all the authorities exhaustively reviewed, and it was expressly ruled in that case that whether the issue were born before or after the wife's seizin of the lands; or whether it be living or dead at the time of the seizin, or at the time of the wife's decease, the husband would be tenant by the curtesy, citing 2 Bla. Comm., 128; Co. Litt., 29 b; Bush & Ux. v. Bradley, 4 Day 298.

We see no necessity for pursuing this subject further. Applying the authorities as heretofore indicated to the proposition now under discussion, there is no escape from the conclusion that the defendant, James R. Griffith, had a curtesy interest in the Thornton forty-acre tract.

Learned counsel for plaintiffs-appellants insist that as to the Pritchett forty, that being the forty in which the conveyance was taken to the husband and wife jointly, as the deed was made to the husband and wife, which ordinarily was an estate by the entirety at common law, it was no such a title as that the husband's curtesy estate would attach, and it is argued at common law such estate was one by entirety, and if the wife died first her surviving husband would take not a curtesy consummate, even though all the other requisites should exist, but he would become invested

with the entire fee.  In other words, the survivor took the entire title.

Upon this proposition it must be again repeated that counsel overlook the question as to the character of the estate that the facts developed at the trial show this estate to be.  In equity the conveyance, if made jointly to husband and wife, would not be held an estate by the entirety.  This has been expressly ruled by this court in McLeod v. Venable, 163 Mo. 536; Jones v. Elkins, 143 Mo. 647.

If this estate created by this deed conveying the Pritchett forty acres to the husband and wife jointly is to be construed for the purpose of defeating the husband of the curtesy as an estate by the entirety, then it is clear that the plaintiffs, as to that forty acres, would have no standing in this court, for the reason that under that construction of the deed the husband would be the absolute owner of the Pritchett forty by his right of survivorship.  Upon that proposition we have reached the conclusion that the defendant is also entitled to a curtesy interest in the Pritchett forty-acre tract.

## II.

This leads us to the consideration of the complaints of the defendant-appellant, James R. Griffith. Learned counsel for defendant insist that the conveyance of the Pritchett forty-acre tract to James R. Griffith and Leona Griffith, his wife, created an estate by entirety, and that upon the death of the wife the defendant became the absolute owner in fee of said forty acres by right of survivorship.

It must be conceded that, if nothing else was disclosed by the record in this cause other than the conveyance itself, the contention of counsel for the defendant would be unanswerable.  The authorities are all one way on that proposition; but this suit involves

a contest as to the nature and character of the estate created by this conveyance, and all the facts were developed concerning the execution and delivery of the deed.   That the purchase money for this land was partly furnished by the defendant, James R. Griffith, and partly by money constituting the separate estate of the wife, the testimony shows beyond dispute.   We have read in detail the testimony developed upon the trial and it fully supports the finding of the court concerning the amount of money belonging to the husband and wife which was applied to the payment for the purchase of the Pritchett forty, as well as the interests of the parties in said lands.

Upon the facts disclosed by the record applicable to this case, it comes directly within the rules of law announced in McLeod v. Venable, and Jones v. Elkins, supra, and the doctrine as announced in those cases is a full and complete answer to the contention of the defendant that the deed to Griffith and wife constituted an estate by entirety.

It was expressly ruled in Jones v. Elkins, supra, that where the husband purchases land and pays for it with the separate money of his wife in part, without her written assent authorizing him so to do, and in part with his own money, and takes the legal title jointly to himself and wife, a court of equity will protect the wife in the enjoyment of her interest in the property, and declare a trust in her favor.

In McLeod v. Venable, supra, the case of Jones v. Elkins was unqualifiedly approved, and it was held that under the rule announced in the Elkins case, as well as under the exceptions to the common law rule announced distinctly in Garner v. Jones, 52 Mo. 68, and under the facts in that case, the wife had a trust estate in the land in proportion to the amount contributed by her to the full amount of the purchase money, which a court of equity would protect.   An

examination of those cases will demonstrate that the facts upon which the rules of law are predicated are nearly identical with the facts in the case at bar.

Counsel for defendant manifestly rely upon the case of Garner v. Jones, supra. That case, it is true, very clearly and correctly announced the rules of law applicable to estates by the entirety, and in a clear, painstaking manner sets forth the reasons upon which the doctrines of estates by the entirety are predicated. With the doctrine announced upon that subject in Garner v. Jones we have no fault to find or criticism to suggest. It is entirely in harmony with the uniform unbroken line of decisions by this court, as well as most of the courts of our sister States where the subject has been in judgment before them. However, it is apparent that defendant overlooked what was said in that case, which is strikingly applicable to the case at bar. The learned judge, after discussing the law applicable to estate by the entirety, in conclusion announced this rule in the following language: "It may be conceded that if a husband invests the separate funds of his wife in real estate and takes a deed to them jointly, a court of equity would protect her in the enjoyment of the property and declare a trust in her favor. But no such point arises in this case."

The cases to which I have directed attention treating of this proposition cite numerous authorities in support of the conclusions therein reached, and it is sufficient to say that if the doctrine as announced in the cases applicable to this proposition are longer to be followed, then there can be but one conclusion reached upon this question, and that is that Leona Griffith, the wife of the defendant-appellant, had an interest in the lands involved in this proceeding, which a court of equity would protect, and she being dead, that the plaintiffs were entitled to the interests as designated in the written finding of the court, and the court was

warranted, as was done in the case of McLeod v. Venable, supra, to decree partition and order the land to be sold and the proceeds distributed in accordance with the interests of the parties.

## III.

This brings us to the consideration of the final question in this case, as to whether or not, under the testimony as developed at the trial, the chancellor was warranted in charging the interests of the defendant in the land involved with certain rents, which it seems is claimed accrued by reason of the occupancy of a part of the land by the defendant and the renting out by the defendant of a part of it prior to the death of the wife.

We take it that the charge of rents was based upon the use of the premises prior to the death of the wife, for subsequent to her death the defendant was a tenant by the curtesy and therefore was not liable for the payment of rents.

We have fully considered the testimony which is sought to be made the basis of that part of the decree which charges the interests of the defendant with rents, and have reached the conclusion that these rents were improperly charged, and should be entirely omitted from the decree. It is true that there is testimony showing that defendant used this land, but it must not be overlooked that he and his wife were living together, both of whom, doubtless, enjoyed the benefits and products of such land. Again it must not be overlooked that this is not a contest between the wife and the husband as to the control of her separate estate in this land. There is an entire absence from this record of any dispute while they were living together as husband and wife, up to the time of her death, as to the control of the premises, or as to whom the rents should be paid.

After the passage of the Married Woman's Act, the unity of husband and wife as to their property rights designated in such act was dissolved, hence as to such property rights they had full authority to contract with each other in respect to the same.

Manifestly as applicable to this case, if the wife during the time that she and her husband were occupying the premises, was denied any right of control of her interest in such premises, or denied the right to collect the rents to which she was entitled, she could have maintained an action in her own name against her husband asserting her rights, thereby recovering a judgment for any rents her husband had deprived her of respecting those premises.

In Rice, Stix & Co. v. Sally, 176 Mo. 107, it was expressly ruled by this court, after a most exhaustive review of all the authorities, that after the passage of the Married Woman's Act, the husband and wife had the right to deal at arm's length with each other, and it was there said, speaking through Judge GANTT, that "the statutes dissolve the unity of husband and wife as to the property rights enumerated in our Married Woman's acts, and make the wife a *feme sole,* and as the husband could always have contracted with a *feme sole* and granted his property after marriage as before, with the exceptions that he could not receive a deed directly from her, and could not dispose of her inchoate dower, there remains no obstacle to their dealing directly with each other at law as well as in equity. That such was the purpose of these Married Woman's acts we have no doubt whatever, and we think that releasing the bonds which bound the wife necessarily left the husband free of the disability which rested on him solely and only because the law rendered his wife incompetent, and when she was rendered *sui juris* noth-

ing remained of the common-law rule as to their incapacity to contract.''

We repeat that this suit does not involve any contest between the wife and her husband as to the control and collection of rents upon lands in which she had a separate estate; neither does the record disclose any dispute or controversy while they were living together up to the time of her death, about the application of rents. While they were authorized under the law respecting their rights of property to contract concerning such property with each other, there is an entire absence from this record of any disclosures showing any express contract or any reference made as to the accounting for rents by the husband to the wife by reason of his occupancy and control of these premises.

The law manifestly would not favor the implication of a contract between parties where the relation of husband and wife existed, where they were residing together in harmony with due respect and consideration for such relation.

It is significant in McLeod v. Venable, supra, where, as before stated, a similar state of facts to the case at bar were developed, that the conveyance was made to the husband and wife jointly on July 10, 1876, and the title to the land involved in that suit remained in the husband and wife until January 24, 1897, a period of nearly twenty-one years, when the wife died, and that no effort was made in that litigation to charge the interest of the husband with any rents, but the decree simply made partition and ordered the sale of the land and the distribution of the proceeds between the husband and her collateral heirs, who were parties to the proceeding. While it is true the record of that cause does not disclose how the lands involved in suit were controlled, yet the conveyance having been made jointly to the husband and wife, together with other facts recited as to the purchase of the land, indicate

that the husband managed and controlled the property, the same as was done by the husband in the case at bar.

Our attention has not been directed to any cases directly in point upon the proposition now in hand. There are cases in which the husband has been required to account for the separate estate of the wife, and has been required to pay money which constituted a part of her separate estate, together with the interest upon such money, but in those cases it must not be overlooked that it was a controversy between the husband and wife while living, and not a dispute as between the collateral heirs of the wife after her death and the husband as to whether or not he should be charged with rents for lands jointly owned by both of them, and about which, as to the use, management and control of the lands, there had never been any reference to a contract, or as to the application of rents, or any dispute whatever concerning the manner in which the property was used.

Our conclusion is that the defendant-appellant's interest in the land in this suit should not be charged with the rents, as contained in the decree. That in order to warrant such a charge the record should clearly disclose that the wife had been denied the control of her interest in the estate, and had also been denied the payment of rents which may have accrued from the premises.

We repeat, that the husband and wife, under the facts as disclosed in this case, were living together and jointly enjoying the use, benefits and products of this land in a manner entirely satisfactory to themselves, and we at least are unwilling, upon the facts as disclosed by this record, to hold that the husband should be made to account for the rent upon the lands involved in this controversy.

We have given expression to our views upon the legal propositions disclosed by this record, and have

pointed out the error of the decree. The judgment and decree of the trial court is affirmed, except that part of it to which we have called attention, in which it seeks to charge the interests of the defendant in the lands sought to be partitioned with rents. The subject of rents has no place in that decree.

It is therefore ordered that this cause be remanded to the circuit court with directions that it modify the decree, by omitting entirely from it the subject of rents. All concur.