# Fidelity Title & Trust Co., Adm'r of Margaret Chadwick, dec'd, *v.* Weitzel, Appellant.

*Equity—Jurisdiction—Review after final hearing.*

The Supreme Court will not necessarily reverse a decree on a bill in equity, if the bill has not been demurred to, and the case has been pursued to final hearing, although the bill merely sets forth facts which amount to a claim by an administrator for money of his decedent, for which assumpsit is an adequate remedy.

*Equity pleading—Responsive answer.*

A responsive answer denying the averments of a bill in equity is not made any the less responsive by setting forth all the facts, though some new matter may be incidentally introduced thereby.

*Contract for maintenance — Confidential relation — Undue influence— Mental capacity.*

A bill in equity for discovery and an account by an administrator averred that decedent was of weak mind, incapable of transacting business, and unable to read and write; that defendant received her into his house, exercised great influence over her, and received from her large sums of money for which he had not accounted. The answer denied that decedent was weak minded, admitted the receipt of money by defendant from decedent, but averred that the money had been paid to defendant under a contract by which he agreed to support and provide a home for decedent during her life and give her suitable burial at death. The master found that decedent had sufficient mental capacity to make a

contract. *Held,* that the answer was responsive to the bill, and that the decedent having made a contract satisfactory to her during her lifetime, it could not be attacked after her death.

Where property is transferred in consideration of care and attention which are honestly bestowed to the end of life, courts do not need to be astute in weighing the profit or loss of the bargain. Per MITCHELL, J.

Argued Nov. 8, 1892. Appeal, No. 279, Oct. T., 1892, by defendant, William Weitzel, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1891, No. 204, on bill in equity. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for discovery and account.

The bill averred that Margaret Chadwick died at the house of William Weitzel and Henrietta Weitzel, his wife, defendants, on Aug. 2, 1890, and that letters of administration were granted to plaintiff on Sept. 16, 1890 ; that decedent was for a period of more than twenty years prior to her death of weak and unsound mind, incapable of transacting business or making contracts, and could not read or write ; that she had no friends or relatives of near degree in the neighborhood, but that she was on terms of great intimacy with defendants during the latter years of her life ; that they had and exercised great influence over her will and actions, managed her affairs, collected her money, provided for her personal wants, paid her board at the " Old Ladies' Home " at Wilkinsburg for a number of years, and removed her in March, 1890, to their own home and kept her until her death ; that all decedent's estate, amounting to $8,000 or more, came into the hands of William Weitzel, and that he has refused to account for the same.

The answer denied that decedent was of weak and unsound mind, and incapable of transacting business, but admitted that she could not read or write. It denied that defendants had exercised great influence over decedent, or that they had collected money due her or received any money belonging to her, except a sum of $1,400 which William Weitzel had received and paid over to her as agent, and $4,578.80 in cash and securities given to him by decedent prior to Oct. 1, 1884, in consideration of which he undertook to support and provide a home for her during her life, furnishing her with proper medical care and attention when needed, and a suitable burial at death.

The master, Thomas Herriott, found that decedent was a person without a " well balanced head ; " that " while she was dangerously close to the line that divides the sane from the lunatics, yet she had sufficient mental capacity to make a contract, and that she would have been careful to make it in her own favor." The master further found as follows : " The case at bar resembles very closely, in one respect at least, Burke's Appeal, 99 Pa. 350, and kindred cases, which the defendant claims rule this case. The only difference that suggests itself to the master is that in Burke's Appeal, supra, and in kindred cases cited for the defendant, the answer admits the possession of money belonging to the plaintiff, but sets up a different trust than that alleged in the bill ; in this case the answer denies the possession of any of the plaintiff's money by the defendants, and alleges a contract with Mrs. Chadwick. This seems to be setting up a distinct defence and is not responsive." . . . .

The master, on authority of Miskey's Ap., 107 Pa. 612, holding that the burden of proving the contract rested on defendant, concluded :

· " In this case we have no evidence whatever to show how this contract was made, no person, with possibly one exception, ever heard of it until less than two months before the death of Mrs. Chadwick, when Mr. Weitzel testifies that for the first time he told his wife about it. The contract alleged was a verbal one, made with a very old woman of very feeble intellect, who had not the slightest advice by any one about entering into such a contract. In addition to the failure of Mr. Weitzel to substantiate the contract as claimed by him, with proof as required by the case above referred to, it is very clear to the master that Mrs. Chadwick did not think she had entered into such contract, as some time after she was taken to the house of Mr. Weitzel she complained of the expense of the doctor's attendance on her, and a week or two after this she got stronger, and said she could do without the doctor, and told him Mr. Weitzel would pay his bill. If the contract claimed by Mr. Weitzel was in force, the master does not think Mrs. Chadwick, who seems to be miserly in her disposition, would have been so anxious to save expense for the benefit of any one but herself."

" The master makes the following special findings of fact:

" 1. In October, 1884, Mrs. Chadwick was not a lunatic, but a very old woman, about eighty-four years of age, of feeble intellect by nature and very peculiar and forgetful.

" 2. Wm. Weitzel was the trusted agent of Mrs. Chadwick in her financial dealings, and loaned $1,400 of Mrs. Chadwick's money to H. J. Jordan and wife, and took as security in his own name a bond and mortgage dated April 21, 1884. He also received from her about July 1, 1884, $2,100 in cash, and about Oct. 1, 1884, a further sum in cash of $1,078.80.

" In accordance with the foregoing opinion and findings of fact, the master would recommend that the bill be dismissed as to Henrietta Weitzel, and a decree be entered against William Weitzel that he account for the money received by him as aforesaid."

Exceptions to the master's report were dismissed by the court, and William Weitzel decreed to pay $4,195.13, with costs, in an opinion by WHITE, J.

*Errors assigned* were (1) in not dismissing bill for want of jurisdiction ; (2) in holding answer not responsive; (3) in holding burden of proof to be on defendant; (4) in holding evidence insufficient to overcome averments of bill; (5) in decreeing as above ; (6) and as to costs.

*J. McF. Carpenter*, for appellant, cited, as to the responsive character of the answer, Burke's Ap., 99 Pa. 350 ; Horton's Ap., 13 Pa. 67 ; Pusey v. Wright, 31 Pa. 387 ; Allen v. Mower, 17 Vt. 61 ; Dunham v. Jackson, 6 Wend. 22 ; Bell v. Bank, 131 Pa. 318 ; Gleghorne's Ap., 118 Pa. 383 ; Eberly v. Groff, 21 Pa. 251.

*T. S. Brown*, *Wm. Stewart* with him, for appellee, cited, on the question of undue influence, Miskey's Ap., 107 Pa. 611 ; Darlington's Ap., 86 Pa. 512 ; Darlington's Est., 147 Pa. 626 ; Greenfield's Est., 14 Pa. 489; Jones's Ap., 39 Leg. Int. 52 ; s. c., 11 W. N. 258 ; Wistar's Ap., 54 Pa. 60 ; Smith v. Loafman, 145 Pa. 628 ; Yardley v. Cuthbertson, 108 Pa. 395. As to responsive answer, 2 Story's Eq. Jur., 12th. ed., § 1529 ; Hart v. Ten Eyck, 2 Johns. Ch. 88; Pusey v. Wright, 31 Pa. 387 ; Patterson v. Silliman, 28 Pa. 304 ; Eaton's Ap., 66 Pa. 483 ; Beckhaus v. Ladner, 48 N. J. Eq. 152.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893:

The jurisdiction in equity as to affirmative relief in this case is, to say the least, questionable. The bill charges the receipt by defendants of certain specific sums of money, alleged to be the property of plaintiff's decedent, followed by the general and vague averment that other sums also came to defendant's hands, etc., and then an averment of demand for an account, and a refusal by defendant on the ground he had no property of the decedent to account for. In all this, little if anything appears but a claim by an administrator for money of his decedent, for which assumpsit, with possibly a bill for incidental discovery, would be the regular and adequate remedy. As the bill however was not demurred to, and the case has been pursued to final hearing, we do not deem it necessary to dispose of it now on that ground.

On the question of pleading, and the effect of the answer, the case is clearly ruled by Burke's Ap., 99 Pa. 350. There, as here, the answer denied the allegations of the bill, but went further and set up what were averred by defendant as the true facts of the transaction. Our Brother STERRETT, by an examination of the authorities not only in our own but other states, showed that a responsive denial of the averments of the bill is not made any less so by setting forth all the facts, though some new matter may be incidentally introduced thereby.

Looking at the evidence in the light of these principles we are constrained to differ with the learned master and the court below. The case belongs to a class where care is necessary to avoid usurping the functions of owners in the disposition of their property. The tendency so notorious in juries to substitute their own notions in disposing of other people's estates differently from the way in which the owners themselves have done, is so insidious as well as so strong that even courts of equity have need to be on guard against it. Equity intervenes justly and properly to protect the weak and the aged against imposition by designing people, and even against manifest improvidence though there is no actual fraud in the other party. But on the other hand it is not to be forgotten that the free control and disposition of property is often the sole means in the hands of age, to secure kindly care and attention, as well as support, from others, when greedy relations ignore the claims

of relationship to the living but devote themselves with persistent assiduity to the estate after death. Where property is transferred in consideration of care and attention which is honestly bestowed till the end of life, courts do not need to be astute in weighing the profit or loss of the bargain. The present is not a case of a party coming in to have a fraudulent or even an improvident arrangement set aside. The bulk of the transactions if not all of them took place more than six years before the decedent's death, and she never made any complaint or expressed any dissatisfaction with them. On the contrary the testimony is uncontradicted that she continued to regard the appellant and his wife as her best if not her only friends, spent her last days in their house, and was kindly and comfortably cared for. The case fails to show any evidence of imposition. The master finds that the decedent was not insane. She was old, illiterate and full of eccentricities but, as not unfrequently happens, fully competent to recollect her property and the rent days punctually as they came around, and sharp and close at a bargain. As the master reports, " While she was dangerously close to the line that divides the sane from the lunatics, yet she had sufficient mental capacity to make a contract, and would have been careful to make it in her own favor."

Nor do we find anything necessarily unconscionable or improvident in the bargain. Whether the defendant's motives were mercenary or not is immaterial. The most that the evidence shows is that throwing out the kindly personal care of the defendant and his wife, and the mental sense of security and restfulness coming to the decedent from confidence in the continuance of such care, the bargain was not pecuniarily profitable to her. But to reach that conclusion we must entirely disregard the most important element of all, the happiness of the decedent in the last years of declining life. The court has no right, on the evidence in this case, to say that this was not the main consideration of the decedent, and that she was not entirely satisfied with the performance of it. It is not for others now to say that she might have done better than she chose to do for herself.

Decree reversed and bill dismissed with costs.