ZERELDA A. CROWLEY, Respondent, v. GEN-
ERAL B. CROWLEY, Appellant.

Kansas City Court of Appeals, November 11, 1912.

**HUSBAND AND WIFE: Separate Estate: Use of Rents: Written
Consent.** Notwithstanding the statute securing the property of
a married woman to her as her separate estate declares that a
husband cannot use or dispose of such property or the rents
and income thereof without her express written consent, yet
if while she is living in harmony with him, she knowingly
permits him to collect rent from her land, through a series of
years, without objection, she cannot, after his death, require
his estate to account to her therefor; the presumption being,
in the absence of evidence to the contrary, that she allowed
him to use the income for the sustenance and betterment of the
family.

Appeal from Ray Circuit Court.—*Hon. Francis H.
Trimble,* Judge.

REVERSED.

*Frank P. Divelbliss* and *A. M. Clark* for appel-
lant.

(1)   When the title to land is in the wife and she
allows her husband to manage the same without any
thing showing that he acted as her agent, she is con-
conclusively presumed to concede his right to use the
proceeds.  Holt v. Coyler, 71 Mo. App. 285; Bank v.
Winn, 132 Mo. 80; Donovan v. Griffith, 215 Mo. 149;
Schroyer's Appeal, 40 Pa. St. 420; McGlinsey's Ap-
peal, 14 Serg. & R. 64; Hamilton's Appeal, 88 Pa. St.
363; Wormsley's Appeal, 20 Atl. (Pa.) 621; Bubb v.
Bubb, 201 Pa. St. 212; Bristor v. Bristor, 93 Ind. 281;
Denny v. Denny, 123 Ind. 340; Jones v. Davenport, 44
N. J. Eq. 23; Homer v. Webster, 33 N. J. Law, 406;
Black v. Black, 30 N. J. Eq. 219; Lishey v. Lishey, 74
Tenn. 48; Seat v. McWhirter, 93 Tenn. 542; Carpenter
v. Hazelrigg, 103 Ky. 538; Buck v. Lee, 36 Ark. 525.

*Lavelock & Kirkpatrick* for respondent.

(1). The real estate mentioned and described in respondent's petition, together with the income, increase and profits arising therefrom, were the separate statutory property of the respondent Zerelda A. Crowley. Sec. 8309, R. S. 1909; Brown v. Brown, 124 Mo. 79; Woodward v. Woodward, 148 Mo. 221; Wall v. Woolfolk, 175 Mo. 278; Myers v. Hansbrough, 202 Mo. 495; Armstrong v. Johnson, 93 Mo. App. 492; Nunn v. Carroll, 83 Mo. App. 135.

ELLISON, J.—In the year 1899 David Crowley and plaintiff were married. Two years thereafter he, being joined by plaintiff, deeded a large farm with some other property to plaintiff's father. On the same day the father deeded the property to plaintiff. Each conveyance was the usual warranty deed and each for the expressed consideration of "one dollar and other valuable considerations." David and plaintiff lived together harmoniously as man and wife for nearly ten years when he died. During this time the farm was rented by David and the rents collected by him just as it had been before he caused its conveyance to plaintiff. No objection to this was made by plaintiff, nor was any claim made that the rents should be paid over to her. But she never gave her express assent in writing that David should collect the rents for his own use and benefit, which she claims was necessary under Sec. 8309, R. S. 1909, before her title would be divested.

After David's death plaintiff presented the present claim to the probate court against his estate for each year's rent, aggregating $6560. The probate judge was disqualified and the cause was certified to the circuit court for trial as provided by statute. The judgment in the latter court was for plaintiff.

That portion of Sec. 8309, R. S. 1909, relied upon by plaintiff, reads that all "income, increase and prof-

its" from a married woman's real estate shall "be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband," unless it be reduced to the possession of the husband "with the express assent of his. wife: *Provided,* that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit, but such property shall be subject to execution for the payments of the debts of the wife contracted before or during marriage, and for any debt or liability of her husband created for necessaries for the wife or family."

The literal reading of the statute is that the rents of a married woman's real estate remain her separate property although used and disposed of by the husband, unless she shall have expressly consented in writing that he might dispose of it for his own use and benefit. In this case plaintiff's deceased husband, through a series of years, did use and dispose of the rents and profits of her land without her consent in writing: And her counsel, in effect, says: There is the letter of the statute, in which it is declared that her property has been taken from her without her consent being given in the only way the law will permit her to give it; therefore a liability has necessarily arisen to compensate her for its unlawful taking. Looking straight at the statute, without a glance to either side, counsel is right, and our duty would be done in directing that the plaintiff have her recompense.

But ought not the reason of the thing to have its weight? It is true that plain terms of a statute should

not be argued away by logic or reason, for it is said that the command of a statute is 'reason enough for those to whom it is addressed. Yet we all know that unless there is something on the face of the law which requires that reason should be excluded, it necessarily must have its weight and influence in determining the meaning of the law. There are two things which must be admitted in arriving at a correct determination of this controversy. One is that the Legislature ought not to be said to have intended a law to have application to a situation where it would not be possible to apply it; and the other is that literal effect cannot be given to this statute in all instances which arise between a husband and wife amicably and jointly presiding over a family. It reads that the income from her real estate is her property and its use or disposal by the husband does not make it his; and plaintiff has cited us many cases where the husband has attempted to convert the wife's note or other personalty by transferring them to others without her express written consent, in which it is held that they would remain hers and might be recovered from the transferee. [McGuire v. Allen, 108 Mo. 403; Hurt v. Cook, 151 Mo. 416; McKee v. Downing, 224 Mo. 115; Egger v. Egger, 225 Mo. 116; Moeckel v. Heim, 46 Mo. App. 340; Nunn v. Carroll, 83 Mo. App. 135.]

But those cases do not present the situation of the parties to this controversy; nor do any others which plaintiff has cited. Here the husband and wife lived together in domestic peace and contentment and the rents of the farm were collected and disposed of by him, he supporting and providing for the family, with no thought by either of a debtor and creditor relationship. The bread upon the table may be made of the wheat or corn which the husband has gotten as rent from the wife's farm. He eats it and thereby uses and consumes the "income and profits" of her land.

Must he have her express consent in writing? Plaintiff's position is that no other kind will destroy the wife's right of property. Husband, wife and family, at her verbal request, visit a neighboring town and enjoy its entertainments; he has used rent money of her land for expenses, including that of himself and the children; should he have gotten her written consent expressly directing how this was to be done? Endless illustrations could be given showing the literal terms of the statute cannot be applied to all of the conditions which do necessarily attend harmonious marital life.

Authorities in other States support this statement, though their statutes are not, in all respects, like ours. Most of them secure to the wife a separate estate with its income free from the claim of her husband, in much the same manner ours does; the only one we have been cited to containing a restriction practically like ours on the mode of acquisition of such property by the husband, is that of Pennsylvania.

The statute of New York secured to the wife as her separate property, her real estate "and the rents, issues and profits thereof, in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband, nor be liable for his debts." In that State where the wife without objection permitted the husband to use rents of her real estate partly, at least, in support of the family, as if his own, it was held she could not afterwards compel him to account to her [Smith v. Smith, 125 N. Y. 224, 229.] In Indiana it is held that where she is living in harmony with her husband and allows him to use and dispose of the *income* of her property, as distinguished from the property itself, and thereby encouraging him to live in manner and style more expensive, she cannot, after his death, set up a claim thereto and perhaps impoverish his estate. [Bristor v. Bristor, 93 Ind. 281.]

·As stated above, our statute (Sec. 8309) reads that the husband's use and disposal of the rents and income of his wife's separate property is required to be by her express written consent. At the same time, other parts of the statute should have influence in the construction of that particular part. The wife may now contract with the husband as if sole (Rice v. Sally, 176 Mo. 107), and the rents and income from her separate estate are liable for support of the family (Secs. 8308, 8309, R. S. 1909). If she, while living amicably with her husband, in joint care of the family and jointly interested in its well-being, foregoes her privilege of exacting a contract from him to repay her the income of her property which she knows he is collecting and which she is necessarily enjoying, directly or indirectly, should be permitted, after a long series of years of peaceful married life and after his death, to set up a claim, which no limitation could bar, it would work a great wrong. [M'Glinsey's Appeal, 14 Serg. & R. 64.]

An Iowa statute secures to the wife her separate property and its income, and like our statute, permits her to maintain an action against the husband who has taken it to himself. Another statute, like ours, makes her property liable for the support of the family. The Supreme Court of that State disallowed her claim, presented after his death, for using a part of the money arising from the collection of drafts. After referring to these sections of the statute, the court said: "These two sections are contained in the same chapter of the code, and as they relate to the same subject-matter they must be construed together. Under the latter section the property of both husband and wife can be compulsorily made liable for the expenses of the family, and the education of the children. Without doubt, we think, the same thing may be accomplished by voluntary action. If, therefore, a wife

devotes her property to such purposes, or knows it is being done by her husband, and makes no objection, she does not thereby become the creditor of her husband, because she has only discharged a legal obligation resting on her as well as her husband, and the latter did not agree or promise he would recompense her for so doing. Broad as section 2204 may seem to be, it should not be construed so as to include property which a wife knows is being applied from day to day through a period of years to the discharge of a legal obligation resting on her equally with her husband. Her consent that it should be so applied must be presumed, and if she desires to hold her husband liable for such property at some future day she should obtain his obligation, or promise to pay. This much at least is required before she can become the creditor of her husband under the circumstances of this case.'' [Courtright v. Courtright, 53 Ia. 57.]

Though our statute requires the wife's written consent, we, with defendant's counsel, have thought proper to investigate the views of courts in jurisdictions which have not such restrictive statute, with a view to a better understanding of the decisions in our own courts to which we will now refer. In Bank v. Winn, 132 Mo. 80, 90, where creditors were claiming that a conveyance from husband to wife to secure her for money used by him with her acquiescence, which she had inherited, was fraudulent, there was evidence tending to show that the land conveyed was of greater value than his debt to the wife. In order to increase the debt the wife contended she was entitled to interest. But notwithstanding there was no written consent, the court held that in the absence of an agreement by the husband to pay interest, none was chargeable, and, as was done by the Supreme Court of Iowa, cited the common liability of the wife with the husband to aid in support of the family, as provided by our statute above cited.

Another case (Donovan v. Griffith, 215 Mo. 149, 169) decided by our Supreme Court as late as 1908, was where the heirs of the deceased wife sought to have the surviving husband declared a trustee in certain lands the title to which was in his name, and certain other lands the title to which was in the joint names of the husband and the deceased wife. The question arose whether the husband should be charged with rents collected and disposed of by him. The court held that he should not be. We cannot see how this plaintiff can escape the controlling authority of that case. The court stated that "it must not be overlooked that he and his wife were living together, both of whom doubtless enjoyed the benefits and products of such land. There is an entire absence of any dispute while they were living together as husband and wife, up to the time of her death, as to the control of the premises, or as to whom the rents should be paid." The court then refers to the right of the wife to have contracted with her husband if she had desired to keep her claim on the rents she knew he was using; and stated that the law would not favor the implication of a contract where they were living together in harmony and enjoying the products of the land in a manner satisfactory to themselves.

Besides these cases from our Supreme Court, defendant's counsel have cited a like decision made by us, in an opinion by SMITH, P. J. [Holt v. Colyer, 71 Mo. App. 280.]

In addition to these cases from our own courts, we find, as above intimated, that the statute in Pennsylvania secured to the wife her property as her separate estate and contained this provision, viz.: "nor shall such property be sold, conveyed, mortgaged, transferred, or in any manner encumbered by her husband, without her written consent first had and obtained and duly acknowledged," etc. It was held in

Hauer's Estate, 140 Pa. St. 420, that where the wife, living in harmony with the husband with no thought of debtor and creditor relationship, permits him to receive and use as his own the rents of her separate property, she cannot at his death recover them without proof of an understanding that he was to account for them. The court distinguished between using the principal or *corpus* of the wife's property and merely the interest or income of it.

Plaintiff's counsel have sought to show that Donovan v. Griffith, supra, was inapplicable for the reason stated that the husband and wife were tenants in common of the real estate, and by an entertaining argument, oral and written, it is maintained that one tenant in common is not liable to his cotenant for rents collected. It, however, will be observed that the court does not consider that feature of the case as in any way influencing its decision. Besides, while where there is an occupancy by one tenant in common, without demand of sharing by the other, the occupying tenant cannot be called to account for rents by the other, yet if one tenant rents the land and collects the rent, as in the Donovan case as to a part of the land, he will be held liable to the other. [Bates v. Hamilton, 144 Mo. 1.]

Again counsel seek to distinguish the Donovan case by the assertion that it was dealing with an equitable separate estate instead of a statutory separate estate involved in this case. We do not see where there is any difference so far as concerns this question. Schouler, in his work on Domestic Relations, Sec. 102, says that in view of the sweeping character of the married woman's statutes, whatever distinction there is "becomes of comparatively little consequence." So a like statement is made by the court in Hauer's Estate, 140 Pa. St. l. c. 427.

The result of the foregoing views is to reverse the judgment. All concur.