CATHERINE WILLIAMS RUSSELL, Appellee, *vs.* MARY A. ROBBINS *et al.* Appellants.

*Opinion filed December 21, 1910.*

1. DEEDS—*evidence is admissible to show actual consideration.* While a consideration duly acknowledged in a deed cannot be contradicted by parol for the purpose of destroying the legal effect of the deed as a conveyance, yet it is legitimate and proper to show the actual consideration for the purpose of determining whether there was fraud for which the deed should be set aside in equity.

2. SAME—*deeds made in consideration of support are different from deeds of ordinary bargain and sale.* A deed made in consideration of the future support of the grantor is distinguished from an ordinary deed of bargain and sale in that the grantor parts with his property in consideration of future support, which a court of equity cannot compel the grantee to furnish and a court of law can not make good in case the grantee violates his agreement.

3. SAME—*when a court of equity may set aside deed made in consideration of future support.* A court of equity may set aside a deed made in consideration of the future support of the grantor if the evidence is such as to justify the conclusion that the contract was entered into by the grantee with a fraudulent intent or has been abandoned.

4. SAME—*grantee's failure to perform must be substantial and not caused by grantor's own fault.* To justify setting aside a deed for failure of the grantee to perform his agreement to furnish support to the grantor, the grantee's failure must be substantial and in relation to material matters; and if the grantor prevents the grantee from performing his agreement there can be no presumption of fraud on the part of the grantee, such as will justify setting aside the deed.

5. SAME—*grantee not obliged to pay for support or services she could render herself.* Where a deed is made upon the consideration that the grantor shall live with and be supported by the grantee the latter is not bound to furnish support at any other place, and if the grantor chooses, without cause, to remain away from the grantee's home and live with other persons, grantee is not bound to pay money for the support and services furnished by such other persons which she could have furnished herself in her own home.

6. SAME—*condition in life of the parties bears upon question whether proper support was furnished.* In determining whether proper support was furnished by the grantee under her agreement

to support the grantor, the condition and station in life of the parties at the time the agreement was made must be considered.

7. The court holds that in this case the clear preponderance of the evidence, coming from disinterested persons, is that the grantor in the deed in question was well cared for and supported by the grantee according to the station in life of the parties, and that the evidence in the record is not sufficient to sustain the decree of the lower court setting such deed aside.

Appeal from the Superior Court of Cook county; the Hon. Arthur H. Chetlain, Judge, presiding.

McCaskill & Son, for appellants.

Birmingham & Swiney, and John Stuart Roberts, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

On December 31, 1909, the appellee, Catherine Williams Russell, filed her amended bill of complaint in the superior court of Cook county asking the court to set aside a deed executed by her on January 18, 1901, of four acres of land in said county, and two subsequent deeds of the same land, to Mary A. Thompson, who is now Mary A. Robbins, one of the appellants. A tenant of Mrs. Robbins was made defendant with her, but he had no substantial interest, and in this opinion Mrs. Robbins will be called the defendant. The ground for asking a cancellation of the deeds was that they were made in consideration of future support of the complainant, which was not furnished. The bill was answered, and the fact that the original deed was made in consideration that the defendant would support the complainant during her natural life was admitted, but the charge that the condition was not complied with was denied. The first deed conveyed the property and the two subsequent deeds conveyed nothing but were of a confirmatory nature. The chancellor heard the evidence of the par-

ties and entered a decree finding that the defendant had failed, refused and neglected to furnish the complainant with reasonable care and support with the exception of about two and a half years after the making of the first deed, and had failed and refused to compensate other parties with whom the complainant had lived the remainder of the time, for such care and support, and setting aside the deeds in accordance with the prayer of the bill.

On the first Sunday in January, 1901, the defendant went with a friend to an old house on the four acres of land in question, where the complainant lived. The complainant was about seventy-three years old and feeble, and her husband had recently died. It was a very cold day, and they found the complainant lying on a broken-down bed, with no fire in the house and covered with a lot of rags. The house was a cheap, old concern, that cost perhaps three or four hundred dollars when built, and was without a foundation, with no glass in the windows and the kitchen doors broken down. The complainant was there alone in a house that was not habitable for a human being, and the defendant, who had worked for her four summers when the defendant was a child, and took some interest in her, proposed to take her home and take care of her. The defendant took something to the house for the complainant to eat and left it there, and the complainant said that if she would take her home she would give her her property, if there was any left. The defendant came back a few days afterward and took the complainant home with her, and on January 18, 1901, the complainant executed a deed of the four acres of land to the defendant. The deed recited the consideration of $100 and future support during the natural life of the complainant. The land was of comparatively little value, being covered with stumps, the greater part of it dry and the remainder a wet slough. The defendant was a working woman of the poorer class, who did washing for others. There was no complaint by

the complainant of her treatment, but in June, 1902, she went on a visit to the home of the defendant's sister, where she remained about three months, during which time the defendant called on her several times and asked her if she wanted to come home, but was told that she was well enough off where she was. The defendant and her sister had some difficulty, and the complainant filed a bill to set aside her deed but afterward dismissed the suit, and on September 2, 1902, executed a warranty deed reciting a consideration of $800 and without any condition as to support. The defendant had put in windows, shingled the house, put water conductors on it, had a well put in, painted the house and put in new floors, and rented it for $5 a month. The $800 was figured up from these improvements and costs paid by the defendant and for some settlement in the probate court, and no other consideration was paid. The complainant then lived with the defendant for some time, but on some date, not made certain by the evidence, she went to the defendant's mother-in-law on an agreement that the mother-in-law would keep her for two weeks, until she could get a hired-man. The complainant found the place pleasant for her and remained there about two years, during which time defendant took clothes and shoes to her and told her she could always come back when she wanted to. The defendant was married to George R. Robbins in October, 1903. He was a well-digger and later janitor of a public school. At the end of the two years the complainant, saying she was going to take a walk, left the mother-in-law and upon search was found at the home of the defendant's sister, where she remained two years. The defendant visited her at various times during the absence of the sister, with whom she was not on good terms, and tried to get her to come back. While the complainant was away from the defendant's home complainant had caused an attorney to place on record a notice that the second deed had been obtained by undue influence and was void for

247 — 33

want of consideration. After two years with the sister the complainant went back to live with the defendant, and the two went to the office of an attorney, where the complainant executed a quit-claim deed on May 14, 1907, to remove the cloud created by the notice, and $800 was named as the consideration in that deed. Complainant then continued to live with the defendant until August 1, 1908, when she walked out of the gate and disappeared. The defendant made search for her and left a notice at the police station, and she was found at the house of another woman who had once been a neighbor of the defendant and who was at enmity with her. A police captain went there to get her to return, but she declined to do so, saying that she had been all right at the defendant's house but did not like to stay there and was going to stay with the other woman. While at this other woman's house the complainant filed this bill, and while there she suffered a stroke of paralysis. About the middle of May, 1910, she came back to the defendant's and was living there at the time of the hearing. The complainant was called to the stand and said that she was eighty-two or eighty-three years old; that she was living with the defendant and had made a deed of the property to her; that she liked it at the defendant's very well, and she repudiated her solicitor in the case. The chancellor being of the opinion that she was incapable of testifying, had her removed from the witness stand and appointed a guardian *ad litem* for her.

The deeds recited money considerations, from which it is argued that they could not be set aside because the complainant could not dispute the payment of such considerations. It is true that a consideration duly acknowledged in a deed cannot be contradicted by parol for the purpose of destroying the legal effect of the deed as a conveyance. (*Kimball* v. *Walker,* 30 Ill. 482; *Illinois Central Ins. Co.* v. *Wolf,* 37 id. 354; *Redmond* v. *Cass,* 226 id. 120.) The legal effect of the deeds is not questioned in this case but

it is admitted that they were sufficient to transfer the legal title, and it was legitimate and proper to show the actual consideration for the purpose of determining whether there was fraud for which the deeds should be set aside in equity. Even on the face of the first deed which conveyed the property, the future support was the material part of the consideration. It is also true, as claimed, that ordinarily a promise to do something in the future does not constitute a fraud, and a violation or disregard of such a promise does not amount to a fraud; but deeds such as those in question in this case belong to a peculiar class, distinguished in the decisions of this court from ordinary deeds of bargain and sale in the fact that the grantor gives up his property for the consideration of future support, which a court of equity cannot compel the grantee to furnish and a court of law cannot make good with damages. (*Frazier v. Miller,* 16 Ill. 48.) If the evidence is such as to justify a conclusion that a contract of that kind was entered into with a fraudulent intent or has been abandoned, a court of equity will set aside the conveyance. The failure to perform on the part of the grantee must be substantial and in relation to material matters, (*Pittenger v. Pittenger,* 208 Ill. 582,) and if the grantor prevents the grantee from carrying out the contract there can be no presumption of fraud which would justify setting aside a deed. (*Calkins v. Calkins,* 220 Ill. 111; *Williams v. Langwill,* 241 id. 441.) The complainant in this case chose to remain away from the home of the defendant, and the defendant was not bound to furnish support at any other place. The chancellor found that the defendant had failed and refused to compensate other parties who took care of the complainant, but she was under no obligation to do so. The other persons who kept the complainant because they chose to do so,—and two of them, perhaps, because of enmity towards the defendant,—never had, or pretended to have, any claim against her. The defendant was not expected to pay in

money for the support of the complainant or the services
of other people which she could herself render.

In determining whether proper support was furnished,
the condition in life of the parties at the time the contract
was made must be taken into consideration. They were
all poor people, and the complainant was not only unable
to care for herself, but had no property that would have
furnished her any support. Defendant was of the work-
ing class, and it was not anticipated by either that the sup-
port furnished would be different from or better than that
pertaining to their station in life. The chancellor found
that proper support was not furnished, and as he saw the
witnesses and heard them testify he had better opportuni-
ties to judge of their credibility than we have, but after
giving due consideration to that fact we are unable to agree
with the conclusion reached. There was no evidence tend-
ing in any degree to show a failure on the part of the de-
fendant to keep her contract from January 18, 1901, when
the first deed was made, up to the summer of 1907, and
the only testimony as to any facts occurring at that time
came from two women who acknowledged their hostility
and ill-feeling toward the defendant and manifested a de-
sire to injure her, if possible. One of them, who did wash-
ing and house-cleaning, and at the time of the hearing was
sweeping, cleaning and dusting for the bureau of charities,
and who for seven months, beginning in the fall of 1907,
occupied a building on the rear of defendant's lot, testified
to want of support and bad treatment, and she was cor-
roborated by her sister to some extent, but there was a very
clear preponderance of evidence coming from disinterested
parties that the complainant was well cared for according
to the station in life of the parties and was well and com-
fortably clothed. The complainant was fickle and change-
able, and would disappear from any place where she might
be, without notice and apparently without cause. Both she
and her husband had been addicted to the use of intoxicat-

ing liquors, and she habitually smoked a pipe. The evidence shows that she had a comfortable room whenever she chose to stay with the defendant and was supplied with pipes and tobacco but not with liquor, and that she spent her time largely in smoking her pipe and did no work except such as she voluntarily did. Under the evidence in the record the decree cannot be supported upon any correct view of the law.

The decree is reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*