ROBERT C. ATKINS and GEORGE E. ATKINS,

*vs.*

JOHN FOREAKER and LENA FOREAKER.

*Kent, May 23, 1921.*

Evidence that the grantor of a deed was a woman 73 years of age, who had been partially paralyzed some time before, and had been delirious while under the influence of narcotics, but that she was at the time of executing the deed capable of realizing the character and purpose of it, her delirium having ceased with the cessation of the narcotics, *held* to show that the grantor was mentally capable of executing the deed.

A conveyance by a woman, who was paralyzed, to her brother and his daughter-in-law, with whom the grantor was living and on whom she was physically dependent, is presumably voidable, and the burden is on the grantee to show its fairness; but that does not mean the deed will not be sustained, if on careful scrutiny it is fair to the grantor.

In a suit by the heirs to set aside a deed executed by an aged, paralyzed woman to the relatives on whom she was pyhsically dependent, in consideration for their support of her during her life, evidence that the grantees had performed their agreement, and that the grantor had no other means of providing for her support, *held* not to show that an unfair advantage was taken of the grantor.

Where an aged woman was pratially paralyzed, so as to require a great deal of care, and had been sent from one relative to another, a promise by grantees to give her care and support for her natural life is a sufficient consideration to sustain a deed to a small farm, valued at $1,500, though the grantees sustained a confidential relationship to her.

Though equity cannot specifically enforce a contract to furnish care and support of grantor for her life, and damages at law would not make good their failure to do so, equity will cancel a deed expressly executed for such consideration, if the grantees fail to perform their agreement, and such protection is sufficient security for the performance of the agreement, to make it a valid consideration for the deed.

The fact that a grantor, who was aged and infirm, had no independent advice before she executed a deed to those who stood in a confidential relationship to her, does not invalidate the deed, where it appeared that it was a fair bargain for her.

BILL TO SET ASIDE A DEED alleged to have been procured from Harriet A. Atkins by undue influence. The case was heard on bill, answer, testimony and exhibits, and the facts sufficiently appear in the opinion.

*James H. Hughes*, for complainants.

*Henry Ridgely* and *Arley B. Magee*, for defendants.

THE CHANCELLOR. The bill seeks to set aside a deed made by Harriet A. Atkins, of Chester, Pa.; dated January 24, 1919, to John Foreaker, her brother, and Lena Foreaker, the wife of John Foreaker's son, conveying to them a small farm in Kent County, Delaware, in consideration of "one dollar and other lawful and valuable consideration, as well as the said parties of the second part to support, clothe and maintain the said party of the first part for and during the remainder of her natural life." The deed was acknowledged the day of the date thereof and recorded on February 4, 1919. On March 2, 1919, the grantor died intestate while living in the home of the grantees in Chester. By the bill the complainants, the two sons of the grantor, who were also her heirs at law, allege that she was mentally incapable of transacting business, aged, physically helpless and dependent on the grantees, who fraudulently and without consideration secured the deed, whereby she disposed of all the property she owned, viz. the farm valued at $1,500.

By their answer the wrongdoing is denied, and it was alleged that, though 73 years of age and feeble physically, the grantor was mentally capable of making the deed, and received the consideration stated therein.

Harriet A. Atkins, a widow, prior to January 6, 1918, kept

a small store in Chester, living by herself there, and on that day was asphyxiated as the result of a fire. She was taken at once to a hospital seriously ill, and remained there until February 18, 1918. As a result of the experience at the fire her left side was paralyzed, and she was then delirious, treated with narcotics and seemed mentally deranged at times for several months. From the hospital she was taken to the home of one of her sons, Robert C. Atkins, one of the complainants, and remained there about three weeks; then on April 9 she was taken to the home of Effie Merritt, a niece; then on June 12, to the home of one of her brothers, Henry Foreaker; and finally on July 21, 1918, to the home of another brother, John Foreaker, one of the defendants, which was also the home of the other defendant, Lena Foreaker, the wife of Albert Foreaker, a son of John Foreaker, and there the grantor remained until her death on March 2, 1919.

Without going into further details, it was shown that when Mrs. Atkins went to the home of the defendants it was the only one open to her, and that serious and unsuccessful efforts had been made by her son, Robert, and others, to secure care for her in some institution other than the almshouse, and that he had even gone there to make inquiries as to accommodations for her there. At the time of the fire she had about $800 in United States Liberty Bonds, and her son Robert, by virtue of a general written power of attorney made by her, dated February 21, 1918, and duly acknowledged, looked after her affairs, and took possession of the bonds and sold her store goods for about $100. Before she came to the home of the defendants, $25 per week was paid for her board and lodging to those with whom she lived, and the remaining $300 of bonds were handed over to her while at the home of the defendants. It is not very clear what became of them, or what application was made of the proceeds thereof, if they were sold, and in any event the matter is not important.

Was Harriet A. Atkins mentally capable of making the deed on January 24, 1919? That she was then partially paralyzed, weak, unable to walk, and had to be carried about from bed to chair and back again, was clearly shown. The physician who attended her when she was injured, but who did not see her after July 8, 1918, which was more than six months before the deed was

made, testified that she had had a hemorrhage of the brain, a condition which would continue, and, therefore, she was not competent to make the deed. But it appeared from other reliable and satisfactory testimony that her mental condition improved after the use of narcotics was suspended. There were other physicians who attended her subsequently, but they were not called by either side as witnesses, the absence of only one of them being accounted for. It is clear that at the time the deed was made the delusions incident to delirium and the use of narcotics and the discontinuance thereof, had disappeared; that she was not then insane or weak-minded; that she conversed intelligently; ate her meals with the family; and besides the physical disability incident to the paralysis, her age and the serious accident which had occurred about a year before, she was, by the testimony of disinterested witnesses, mentally capable of making the deed.

It also appeared clearly that she knew the character and purpose of the deed, realized that by it she was conveying away absolutely the farm in exchange for a home for the rest of her life, understanding that it meant board, lodging and clothes to be furnished by her brother and his daughter-in-law. In other words, the requirement of proof set out by Chancellor Saulsbury was complied with, viz. a "clear proof of the comprehension of the nature, character and effect of the act thus performed." See *Jones v. Thompson,* 5 *Del. Ch.* 374, 392.

It is clear, too, that at the time the deed was made the grantor was dependent on the grantees in the sense that she then believed that there was no other home open to her, and was feeble and needed much attention to her person by reason of the paralysis of her limbs. Furthermore, there was evidence of physical control over her person exercised by her brother, one of the defendants. His son, Albert, according to one witness, whose testimony was not denied, accounted for a bruise which was on Mrs. Atkins' face about Christmas, 1918, about a month before the deed was made, by saying that his father, John Foreaker had smacked his sister. These facts created the species of fiduciary relationship referred to in *McKnatt v. McKnatt,* 10 *Del. Ch.* 392, 93 *Atl.* 367. The transaction was, therefore, presumably voidable and the burden of showing its fairness is upon the grantees. It

does not necessarily result from such fiduciary relation that no business transaction between the parties to it can be maintained; but it does mean that they will be carefully scrutinized to ascertain whether they were fair to the infirm participant.

It is true, there was scant testimony as to the origin of the deed. A woman named Louise G. Porter, employed by Albert D. McDade, an attorney-at-law in Chester, appeared at the residence of Mrs. Atkins announcing that she came by direction of Mr. McDade to have a deed executed by Mrs. Atkins. Mrs. Porter was a notary public, and went alone to the room of Mrs. Atkins, read the deed to her, explained that it was giving the farm for a home, and it was signed and acknowledged by the grantor, she making her mark. At the time of signing a neighbor who knew Mrs. Atkins was called into the room to act as a witness with the notary public. Lena Foreaker, one of the grantees, was also in the room, but said nothing. Two disinterested persons, the attesting witnesses, testified that at the time of the execution of the deed the grantor stated to them that she was signing the deed because of her gratitude to Lena Foreaker, saying, "She is so good to me."

McDade did not draw the deed, and there was no explanation as to who drew it. McDade did not testify. Lena Foreaker told of the reasons given to her by the grantor for making the deed, viz. past and future support and care, and testified that Mrs. Atkins had said that she, Mrs. Atkins, was having the deed made to the witness and her father-in-law. Lena Foraker also testified that the grantee delivered the deed to her after its execution. The notary public did not throw any light on the subject, except that she was sent by Mr. McDade to have the deed executed, and that it was not prepared in his office. It is regretted that John Foreaker did not testify. His solicitor stated to the court that Mr. Foreaker was unable to talk by reason of a partial paralysis, and therefore was not called as a witness, and the statement as to his physical condition was admitted by the solicitor for the complainants.

There was no concealment of the making of the deed. It was recorded within a few days. Robert C. Atkins, the son who acted as attorney in fact for his mother and transacted her business, visited her ferquently after the deed was made and saw her

340     ATKINS, ET AL., vs. FOREAKER, ET AL.

Opinion.

alone.   Before the death of his mother he was told by Lena
Foraker of the making of the deed, and mentioned it to his mother,
but she made no response.   He also testified that Lena Foreaker
in the presence of his mother and after the deed was made, ex-
plained to him the reasons for the making of it, and that his mother
said nothing.   There was no evidence that the other son knew of
the deed in the life of the grantor.   While this testimony as to
the origin of the deed is not as full as is desirable in such cases,
still there is nothing in it necessarily derogatory to the grantees,
or indicating bad faith, or unfairness to the grantor.

The consideration in the deed was performed to the extent
of the ability of the grantees, though their home was plain, and
the living accommodations a bit crowded.   From Lena Foreaker
the grantor received nothing but kindly care.   The agreement
when made was not a particularly good one for the grantees, and
might have turned out an unprofitable one had Mrs. Atkins lived
long, for she would have required more and more care, nursing
and medical attention.

There was no evidence of solicitation by the grantees or the
exercise of any undue influence over her, and the only element of
influence over the conduct of the grantor arose from the situation
—her age, physical helplessness and dependence on the grantees
for a home and support.   The farm was only worth about $1,500,
and the use of it as a source of support was apparently not con-
sidered by Mrs. Atkins, and there was no evidence as to the in-
come received therefrom.

The transaction was not unfair to the grantor, or improvi-
dent, and so was not an imposition upon her.   On the contrary, if
she was amply secured to obtain the consideration stated in the
deed, she had made a good bargain for herself, for she was entitled
by it to be lodged, clothed and fed for the rest of her life by her
brother and his daughter-in-law, in whose home she was living,
and after being moved from one relative to another because they
were unable or unwilling to give her the care she needed there
seemed to be no other place of refuge for her, except the almshouse.
It is important to determine, therefore, whether the grantor was
amply secured as to the consideration in the deed in case the gran-
tees failed to perform their implied contract.

A court of equity could not compel the grantees to furnish to the grantor the support stated as a consideration, and damages at law would not make good their failure to do so; but a court of equity would protect the grantor, an aged and helpless woman, dependent on the grantees, by setting aside the conveyance if they had made default to perform the duty stated in the deed. *Frazier v. Miller*, 16 *Ill.* 48; *Russell v. Robbins*, 247 *Ill.* 510, 93 *N. E.* 324, 139 *Am. St. Rep.* 342.

In *Russell v. Robbins*, where the consideration stated was future support, it was held that though a court of equity cannot compel the grantee to furnish support and a court of law cannot make good with damages the failure to do so, still a court of equity would on application of the grantor set aside the conveyance upon failure to provide support. It was said:

"If the evidence is such as to justify a conclusion that a contract of that kind was entered into with a fraudulent intent, or has been abandoned, a court of equity will set aside the conveyance."

In making this ruling the Court was following an early Illinois case, *Frazier v. Miller*, 16 *Ill.* 48, where there was a conveyance of land with an agreement by the grantee for support of the grantor and the grantee had given a bond to secure performance of the consideration. The grantee subsequently refused to support the grantor, and the Court on a bill by the grantor set aside the deed because damages at law on the bond would not afford a full, complete and adequate remedy.

This is quite in accord with the decisions of the Delaware courts. In *Short v. Prettyman*, 1 *Houst.* 334, the validity of a deed which stated as the consideration that the grantee comfortably clothe, lodge and board the grantor for life was under consideration; it being urged that it was not a sufficient consideration because executory and because the grantee did not execute the deed. The question arose in an action of ejectment and Chief Justice Harrington charged the jury that the consideration though unusual was not unreasonable under the circumstances, and if in fact performed, the validity and operation of the deed could not be impeached on the ground merely that the consideration was conditional and executory. Also that the grantee was bound to perform the consideration as though there was an express covenant

in a deed signed by her, though in fact she had not signed it. This case was not accepted as a pertinent decision in the *McKnatt, case*, because there the consideration, which was of the same kind was not stated in the deed and its absence therefrom was the most prominent point in the opinion of the Court. It was held in the *McKnatt case* that the performance of such consideration not stated in the deed did not validate the deed, unfair at the time it was made. In the present case, however, the statement in the deed of an enforceable consideration, though it be conditional or executory, made fair that which would otherwise have been unfair.

It was not shown clearly that the grantor, Mrs. Atkins, had the benefit of independent advice, legal or otherwise, of her own choosing, at and before making the deed. The notary public who was sent to secure the execution of the deed, though she in fact read and explained it to the grantor, was a stranger to her and was not an adviser selected by her, and was not shown to be competent as an adviser, or to have given or been asked for advice. This feature was not made a ground of the decision in *McKnatt v. McKnatt*, though raised there. No authority was cited, or has been found, which would justify the setting aside of a conveyance made pursuant to a fair bargain, though made by an aged or infirm person, even if there was not such independent advice. Gifts by those more or less dependent by reason of infirmity or otherwise, especially if the gift be of all of the donor's property, have been set aside unless the donors had proper independent advice. *Slack v. Rees*, 66 *N. J. Eq.* 447, 59 *Atl.* 466, 69 *L. R.A.* 393; *Post v. Hagan*, 71 *N. J. Eq.* 234, 65 *Atl.* 1026, 124 *Am. St. Rep.* 997, wherein the character of such advice is defined; and *Hoeb v. Maschinot*, 140 *Ky.* 330, 131 *S. W.* 23. But there is not the same need of advice if a grantor has in fact made, as Mrs. Atkins did, a fair bargain without legal or other advice or assistance. The absence of independent advice does not render voidable the deed in this case. The supervisory, protective power of the Court of Chancery was available to the grantor, and under the facts in this case an ample protection to her. On the face of the deed the duty of the grantees was stated, and would be notice to any one who dealt with the grantees in the deed relying on their

ownership through the deed. The son of the grantor trusted by her to transact her business knew of the transaction soon after it occurred. An express power of revocation in the deed would not have afforded the grantor greater protection than she had under the deed, for as hereinabove shown, the Court had power to give relief in case of a failure in the performance of the condition.

In this connection it is well to quote from the case of *Fidelity etc., Co. v. Weitzel*, 152 *Pa.* 498, 502, 25 *Atl.* 569, 571, the following statement:

"Equity intervenes justly and properly to protect the weak and the aged against imposition by designing people, and even against manifest improvidence though there is no actual fraud in the other party. But on the other hand it is not to be forgotten that the free control and disposition of property is often the sole means in the hands of age, to secure kindly care and attention as well as support, from others, when greedy relations ignore the claims of relationship to the living but devote themselves with persistent assiduity to the estate after death. Where property is transferred in consideration of care and attention which is honestly bestowed till the end of life, courts do not need to be astute in weighing the profit or loss of the bargain."

The courts of Delaware have consistently applied principles here indicated when necessary, each case presenting a different situation. The Delaware cases are referred to in *McKnatt v. McKnatt, supra*. That case was an extreme one and called for the application of the strict rule, for there was no security to the aged grantor, while here the statement in the deed of the real consideration is a protection to the grantor. In the case of *Marker v. Kelly*, in Kent County, *ante p.* 288, a deed of all of his property was made by an aged, infirm man to one not a relative, with an agreement for support for life, and because the grantor was not imposed upon, acted with intelligent understanding, by legal advice and was protected by a bond made by the grantee, the deed was sustained by the Chancellor after the death of the grantor, who in fact received the consideration agreed upon. In the present case there was no imposition, and a similar consideration for a conveyance was set forth in the deed, and as this grantor was protected thereby the deed will not be set aside after her death and after she has received the benefit of the transaction.

It was urged that the power o' the Court of Chancery to set aside the deed in case of default in performance of the considera-

tion was not a protection to the grantor if she was helpless, under the control of the grantees and without money to litigate for her rights. But that is not a fair argument. She had sons to protect her if for any reason she was too feeble to protect herself, and legal assistance is still available for the protection of persons situated as the grantor was, though compensation for the service is not assured.

The conclusion is, that though the grantor was aged, infirm, physically dependent on the grantees in such way as to create a fiduciary relation between them, nevertheless it was shown that the grantor was not imposed upon by undue influence, or otherwise; that the agreement for her support for life stated as the consideration in the deed was fair and equitable; that she was mentally capable of making and understanding the transaction, and did comprehend it; and that the consideration was performed. Under such findings the absence of independent advice, legal or otherwise, to the grantor was immaterial. There is no sufficient reason, therefore, to set aside the deed, and the bill will be dismissed with costs on the complainants.

A decree will be entered accordingly.