# Barnard et al., Appellants, *v.* Kell et ux.

*Deed—Voluntary conveyance—Gift—Revocation — Independent advice—Confidential relation between grantor and grantee—Presumption—Master and servant—Burden of proof.*

1. Where a woman executes and delivers a deed of real estate to a man and wife, out of gratitude for services and kindness rendered to her, and she does this with the full intention not to revoke the deed, and upon her own motion, without suggestion from either of the grantees, the absence of a clause of revocation, and of independent advice, is immaterial.

2. In such case, where it appears that the husband occupied the position of a messenger or servant to the grantor and that the wife nursed her in her last illness, that the grantor was in no way impaired in mind, and that no fraud was imposed upon her, the deed will not be set aside on the ground of the existence of an alleged confidential relation between grantor and grantees.

3. In the mere relation of master and servant there can be no implication of confidential relation to be overcome by proof.

*Deeds—Witnesses—Signing at request of agent—Alteration of instrument.*

4. Subscribing witnesses to a deed are not necessary, and if delivery is made and proved, the instrument is valid, it matters not when they sign; and this is true when the witness does not sign in the presence of the grantor, but does so at the request of the grantor's attorney and agent.

5. The rule as to alteration of written instruments affecting their validity is inapplicable to an alteration which leaves the legal effect of the instrument as it was before.

*Equity—Equity practice—Matters not charged in the bill.*

6. Matters not charged in a bill in equity may not be set up at the trial.

- Argued May 9, 1921. Appeal, No. 166, Jan. T., 1921, by plaintiffs, from decree of C. P. Perry Co., Nov. T., 1919, No. 3, dismissing bill in equity, in case of Jennie R. Barnard et al., heirs of Emma E. Boden, deceased, v. William S. Kell and Minnie D. Kell, his wife.  Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.  Affirmed.

Bill in equity to revoke deed.  Before Barnett, P. J. The opinion of the Supreme Court states the facts. The court dismissed the bill.  Plaintiff appealed.

*Error assigned,* among others, was decree, dismissing exceptions by plaintiff, quoting it.

*J. Howard Neely,* for appellants.—Where the grantee or other beneficiary of a deed or will is a person who has maintained intimate relations with the grantor or testator or has drafted or advised the terms of the instrument, a presumption of undue influence or of fraud on the part of the beneficiary has often been applied: Darlington's Est., 147 Pa. 624; Yardley v. Cuthbertson, 108 Pa. 395; Neal v. Black, 177 Pa. 83; Miller v. Oestrich, 157 Pa. 264; Douglass's Est., 162 Pa. 567.

A confidential relation such as the law infers always exists as between parent and child, guardian and ward, counsel and client, principal and agent, but it also exists in numerous other cases where only the facts warrant the inference: Stepp v. Frampton, 179 Pa. 284; O'Donnell v. Breck, 7 Pa. Superior Ct. 24; Darlington's Est., 147 Pa. 624; Knee v. McDowell, 25 Pa. Superior Ct. 641; Greenfield's Est., 14 Pa. 489; Miskey's App., 107 Pa. 611.

Emma E. Boden should have had independent advice: Clark v. Clark, 174 Pa. 309; Worrall's App., 110 Pa. 349; Darlington's Est., 147 Pa. 624; Miskey's App., 107 Pa. 631; Russell's App., 75 Pa. 269; Rick's App., 105 Pa. 528; Bristor v. Tasker, 135 Pa. 110.

The addition of the name of a witness to the signature of a paper after its execution, without the knowledge and consent of the parties, is a material alteration which renders the paper inadmissible in evidence: Shiffer v. Mosier, 225 Pa. 552; Marshall v. Gougler, 10 S. & R. 163; Henning v. Werkheiser, 8 Pa. 518; Foust v. Renno, 8 Pa. 378; Everhart v. Fulmer, 58 Pa. Superior Ct. 454; Swank v. Kaufman, 255 Pa. 316; Fisher v. King, 153 Pa. 3.

The absence of a power of revocation in a voluntary deed is a circumstance which throws the burden of proof upon the party deriving benefit: Bristor v. Tasker, 135 Pa. 110; Rick's App., 105 Pa. 528; Simon v. Simon, 163 Pa. 292; Russell's App., 75 Pa. 269.

*Luke Baker* and *James W. Shull,* for appellees.—No confidential relation existed between donor and donees: Audenreid's App., 89 Pa. 114; Doran v. McConlogue, 150 Pa. 98; Miller v. Oestrich, 157 Pa. 264; Herster v. Herster, 122 Pa. 259; Douglass's Est., 162 Pa. 567; Messner v. Elliott, 184 Pa. 41; Yorke's Est., 185 Pa. 61; Logan's Est., 195 Pa. 282; Friend's Est., 198 Pa. 363; McEnroe v. McEnroe, 201 Pa. 477; Adam's Est., 201 Pa. 502; Funston v. Twining, 202 Pa. 88.

There was sufficient evidence to sustain a gift even if a confidential relation existed: McEnroe v. McEnroe, 201 Pa. 477; Logan's Est., 195 Pa. 282; Friend's Est., 198 Pa. 363; Matthaei v. Pownall, 235 Pa. 460.

The bill in this case contained no sufficient averment of fraud and undue influence.

Independent advice was not necessary.

Under the facts, the deed in question was not affected by the addition of the signature of a witness: Marshall v. Gougler, 10 S. & R. 164; Foust v. Renno, 8 Pa. 378; Henning v. Werkheiser, 8 Pa. 518; Fritz v. Comm'rs, 17 Pa. 130; Neff v. Horner, 63 Pa. 327; Robertson v. Hay, 91 Pa. 242; Fisher v. King, 153 Pa. 3; Shiffer v. Mosier, 225 Pa. 552; Swank v. Kaufman, 255 Pa. 316.

OPINION BY MR. JUSTICE SCHAFFER, May 26, 1921:

Emma E. Boden was a childless widow, sixty-six years of age, whose nearest relatives, appellants, were cousins, with whom she was not intimate. At the time of her husband's death, May 8, 1919, she was in poor health, suffering from pernicious anemia, an incurable disease; she died July 12, 1919.

William S. Kell, defendant, was tenant on one of decedent's farms, and had occupied it as such for many years. Kell and his wife were on terms of intimate friendliness with Mrs. Boden; the relation which he occupied toward her, in addition to that of tenant, was as messenger in her business transactions, and as servant about her home; his wife assisted in nursing her in the illness with which she was afflicted.

To friends and neighbors, Mrs. Boden expressed her interest in, feeling of good will toward and desire to in some substantial way reward the Kells for their kindness to her; to one of them, who was produced as a witness on the trial, she made the specific declaration that she intended to give the Kells the farm involved in this litigation.

In pursuance of this purpose, she had Kell prepare a paper, in the nature of a receipt, for the consideration money for the property, which she signed, and which by her direction he took, with the title deeds, to her attorney (who had represented her for several years, and who at that time was acting as her counsel in settling her husband's estate, of which she was executrix), with instructions to prepare a deed from her to Kell and his wife, and when completed to bring it to her for execution.

Acting under these instructions, her attorney prepared the deed, and called at her home, where she was bedfast, to have it signed. He read it to her, she commenting upon it as he proceeded, among other things, telling him not to read the courses and distances, only the names of the adjoiners, as she was familiar with the lines of the property. When the reading was completed she signed the deed, announcing that she had been paid for the property, although as a matter of fact she was making a gift of it, and the attorney, who was a notary public, took her acknowledgment and acted as a witness.

She had a short time before sold some of her land to an acquaintance, J. Geary Morrow, and he, at her direction, was called in by Kell also to witness the instrument. Owing to his clothing being soiled, he indicated a desire not to enter Mrs. Boden's sick room, and remained in an adjoining room, with the doors leading to her room open, but where he could not hear or see what transpired. He was familiar with her signature, and, after the deed was signed, at the suggestion and by the request of her attorney, but not in her presence, signed the deed as a witness.

During the entire time consumed in reading the deed and its execution, Kell was present in the room with Motter, the grantor's attorney; no one else was there. The deed was delivered, after its execution, and recorded. It contained no clause of revocation, and the grantor had no independent advice in the transaction. The farm

.represented in value about one-third of the grantor's estate.

Shortly after the death of Mrs. Boden, appellants, her cousins and heirs, filed this bill to have the deed cancelled and the property conveyed to them, upon the grounds that a confidential relation existed between the grantor and grantees, and, because of this relation, it was procured by fraud and undue influence; as circumstances making for its invalidity, they set up the absence of independent advice to the donor and the omission from the deed of a power of revocation. As to the two latter, it is sufficient to say the testimony shows it was never Mrs. Boden's intention under any circumstances to revoke the gift, she intending it to be absolute and outright; the project of giving the property was her own, originated by her, without suggestion from either of the grantees. In such a situation, on the facts in this case, no independent advice was required, and the absence of a clause of revocation is without moment.

With reference to the allegations of fraud and undue influence, and in connection therewith, the so-called confidential relationship of William Kell, one of the grantees, to their benefactress, certain observations which we are about to make will clear the situation. In the first place, this deed is not to Kell, the husband alone, but to him and his wife. There is not so much as an insinuation in the testimony that any undue influence was operative from or through the wife or in her behalf. Furthermore, this case is bereft of any evidence of mental impairment of the donor; on the contrary, the evidence is all the other way; from neighbors, acquaintances, persons who had business dealings with her, it all vouches her mental soundness and integrity. The two witnesses best qualified to speak, her attorney, who, following the death of her husband, was brought into close and frequent relationship with her, in advising upon the settlement of his estate, and the doctor, who was in continuous attendance upon her, both declare her

mentally unimpaired, the latter that mentally she was very clear, very acute, precise, that she knew what she wanted, did not care to be crossed in her ideas and had her mind made up very definitely as to what she cared to have done and was not easily influenced; the former regarded her as a shrewd business women. This was also the opinion of the register of wills, who called upon her shortly before the execution of the deed in question to grant letters testamentary to her on her husband's estate, and in whose judgment she was a very intelligent woman, entirely capable of administering it. Many of her neighbors spoke to the same effect. The testimony nowhere indicates mental impairment; it shows that at times, owing to her disease, she was very weak physically, nothing more.

So far as the exercise of undue influence upon her is concerned, there is no evidence of it whatever and none of any fraud practiced upon her. In the making of the deed, she called in her own attorney, who had never acted for either of the grantees. It is not pretended that the donees had dominion over her mind or could subvert her will to theirs. She had declared her purpose to make a benefaction to them before doing so, and, in executing the deed, carried out her declared intention of rewarding them for their faithfulness and many kindnesses to her. The relation of Kell, the husband, to her was, as found by the court below, that of messenger or servant. It would be going a long way to hold that every faithful servant, to whom a gift is made, has cast upon him the burden of disproving undue influence because of the relation. We have said "we cannot see that in the mere relation of master and servant there can be any implication of confidential relation" (Doran v. McConlogue, 150 Pa. 98); but, if there was any such burden upon the donees in this case, they have met it by testimony, which shows in granting them the farm their benefactress made a free-will gift.

That the subscribing witness, Morrow, signed after the grantor had executed the paper, out of her presence and not by her express request, is urged by appellants; but they overlook the fact that the request to sign was made by Mrs. Boden's attorney, who was her agent. The circumstances now insisted upon were not set up in the bill as reasons for invalidating the deed, and they could be dismissed for that reason alone (Isett v. Maclay, 265 Pa. 166); subscribing witnesses to a deed, however, are not necessary, and if delivery is made and proved, the instrument is valid, it matters not when they sign.

In Long v. Ramsay, 1 S. & R. 72, 73, Chief Justice TILGHMAN said, "It was once supposed, that a deed could not be good without subscribing witnesses, but of late it has been considered that such witnesses were not essential. It is enough, if there was a sealing and delivery; of this the jury are the judge, and, upon proof of the handwriting of the obligor, they may presume the sealing and delivery." This case was followed in Steel v. Tuttle, 15 S. & R. 210, 217, the court saying, "At one time, it was supposed that a deed could not be good without subscribing witnesses, because the delivery could only be proved by a witness who saw it delivered; but there is no general rule which has so many exceptions as this; for if there be no subscribing witnesses, the handwriting of the grantor may be proved; or if the subscribing witnesses are dead, or cannot be found, are interested, become infamous, insane or blind, proof of their handwriting will be sufficient. The reasoning of the Chief Justice, in Long v. Ramsay, 1 Serg. & Rawle 72, is conclusive." Chief Justice GIBSON, speaking for the court, in Miller v. Gilleland, 19 Pa. 119, 122, said, "The conveyance of an estate which lies in livery, and not in grant, is not avoided by an alteration even in a material part of it; for the title, being vested by a deed having by statute the force of livery of seisen, can be reversed only by a reconveyance: Bull. N. P. 267. But an alteration of a bond, bill, or note, stands on a different princi-

ple. When it is made by the voluntary act of the creditor, and increases or injuriously affects the responsibility of the debtor, whatever the motive for it, the security is gone. The rule is founded in policy, to protect the debtor from acts prejudicial to him, hard to be guarded against, and done in his absence, and without his agency or consent; but it is inapplicable to an alteration which leaves the legal effect of the instrument as it was before: as was held in Zouch v. Clay, 1 Ventris 185; Hunt v. Adams, 6 Mass. 519; Nevins v. DeGrand, 15 Mass. 436; and some other cases. Where there can be no wrong, the policy of protection has no place."

The reasoning of the great Chief Justice distinguishes from the case in hand the cases of Shiffer v. Mosier, 225 Pa. 552, and Swank v. Kaufman, 255 Pa. 316, one of which was a suit to recover on a written agreement and the other an action on a promissory note. In the instant case it will be observed that the attesting witness, in signing as such, performed the service which he had been requested by the grantor to perform, and did so at the request of her attorney.

The case was properly decided by the learned chancellor who heard it. All of the assignments of error are overruled and the decree is affirmed at appellants' cost.