FRANK CARUSO, ROSE CARUSO CONOMON, IDA CARUSO CRESENZIO, MARY CARUSO BOSCO, MARY CARUSO SASSONE, CARRIE CARUSO MARTIN, MICHAEL CARUSO, JOSEPH J. CARUSO AND JAMES J. CARUSO,

*vs.*

MARY L. CARUSO AND SAMUEL CARUSO.

*New Castle, Mar.* 14, 1934.

*Henry R. Isaacs*, for complainants.

*John B. Jester* and *A. James Gallo*, for defendants.

THE CHANCELLOR: The bill charges that Nicholas Caruso was a decrepit old man past seventy years of age, hard of hearing and incapable of reading or understanding the English language, that the deeds were not read to him and that when he executed them he had no understanding of their meaning and significance.

The testimony fails utterly to sustain the allegation that the grantor, notwithstanding his seventy-three years of

age, was in any sense a decrepit man. On the contrary he was able to attend to his business, looked after the pieces of his real property which were rather large in number, personally did work on them in the way of repairs and supervised all such work. The complainants through their solicitor admit that the mind of their father was not lacking in capacity to any greater extent than is ordinarily found in the case of a man of his years. I think the testimony shows that his mental capacity, in so far as competency to execute a conveyance of the property is concerned, was in no sense impaired by his age. He did have some difficulty with his hearing. But that was merely physical and not so great as to render conversation with him impossible.

He was not in a condition of dependency upon any one, much less of his daughter-in-law, his grantee, who did not live with him. There is nothing in the evidence which gives even a slight justification for the idea that a fiduciary relationship existed between him and her.

The property he gave to his daughter-in-law did not comprise all of his estate. The complainants contend that it amounted to one-half of his estate. I cannot agree that the method of calculation which they use to establish that fraction, is acceptable. They take the assessed values as correct market values and ignore a mortgage lien. The principal contention is over the Shipley Street property which is assessed at about eleven thousand dollars. It is subject to a mortgage lien of forty-six hundred dollars. But the testimony shows its market value to be not over six thousand dollars. Thus the value of the equity in it is probably not over fourteen hundred dollars as against sixty-four hundred dollars which is claimed by the complainants.

Let the fact of the value of the equity, however, be as it may, what does it amount to if the grantor, when he gave it away, was capable of comprehending what he was doing, was in no way over-reached by designing persons or his situation was not such as to make him the pliable victim of another's greed? A person in the full possession of

his faculties and so circumstanced that he is a perfectly free and voluntary actor, may if he sees fit be generous with his possessions. Equity does not concern itself to protect a normal man from the impulses of a charitable disposition. I do not see what point there is to a discussion of the fact that independent advice was not secured by the grantor, when the evidence shows that both in mind and circumstance he was wholly independent. In *Atkins, et al., v. Foreaker, et al.*, 12 *Del. Ch.* 335, 114 *A.* 173, 176, cases were cited to show that gifts, especially if they be of all the donor's property, have been set aside unless the donors had proper independent advice; but the cases cited show them to be limited to where the gifts which are made, quoting Chancellor Curtis, are made "by those more or less dependent by reason of infirmity or otherwise." In *Barnard, et al., v. Kell, et ux.*, 271 *Pa.* 80, 113 *A.* 836, the absence of independent advice is said to be immaterial where the gift was made by a competent donor on her own motion.

In the instant case, assuming no misrepresentation or fraud to have been practiced, the fact that the grantor received no independent advice is of no significance whatever.

Was there fraud or misrepresentation of any kind? That is a question of fact. I am not disposed to discuss the evidence offered by the complainants to show it. Giving to the evidence adduced by the complainants alone the full weight of its reasonable implications, the case of fraud is not made out. There is no testimony whatever to the effect that the deeds were misrepresented to the grantor. The only evidence which can be referred to as in any sense showing that the grantor did not know what was in the deeds is the fact that they were not read over to him. But he signed and acknowledged them. If his signing and acknowledgment had been induced by a false representation of their contents, he himself being unable to read, the case would stand in a different light. Such was not the case. I conclude from the testimony that the grantor knew what

the deeds purported to convey. Though they were not read to him, their contents were such as he had directed. All parties, the complainants as well as the defendants, agree that the grantor knew he had conveyed the Buttonwood Street properties, and one of the children, who is a complainant, admits that her father told her after the event that he had conveyed the Shipley Street properties. He never expressed any dissatisfaction with what he had done and appears to have been fully content therewith. If his daughter-in-law had deceived him in any way, it is difficult to understand why he did not disclose to some one of his children a complaint about it.

It is not necessary for me to notice and discuss the little details which, as is usual in such cases as this, the parties lay hold of in aid of their respective contentions. I content myself with saying that the evidence leads me to conclude that the grantor wanted to make a gift to his son Samuel, who had just recently been married, that because of the son's debts the grantor deemed it unwise to place any titles in his name; and that he accordingly on his own motion, while he was in the full possession of his faculties, without solicitation or the pressure of inducing circumstances, concluded to make a gift of the properties to his new daughter-in-law as a wedding present. That he wanted the matter of the gift kept quiet, is of no moment. He evidently did not desire to be annoyed by any possible arguments over it.

It is suggested that inasmuch as the properties were a gift and the money consideration named in the deeds was not therefore the real consideration, the deeds are void for that reason. This contention is not tenable. *Combs, et ux., v. Scharf, et al.,* 143 *Md.* 70, 121 *A.* 857.

The bill will be dismissed.