McGILLIVRAY, Respondent, v. PETERSON, et al., Appellants

(41 N. W.2d 832)

(File No. 9081. Opinion filed March 17, 1950)

**Austin & Lovre, Irving A. Hinderaker,** Watertown, for Plaintiff and Respondent.

**McFarland & Paterson,** Watertown, **Ralph A. Dunham,** Clark, for Defendants and Appellants.

ROBERTS, J. This is an action commenced by Susanna A. Stinson in the circuit court of Clark county against Alice G. Peterson and Patricia Madeline Mann to set aside three deeds executed in consideration of a promise to sup-

port the grantor. Judgment was entered canceling the deeds and defendants have appealed.

Susanna A. Stinson has been committed to the State Hospital for the Insane since the trial of this action and the guardian of her estate has been substituted as plaintiff. We will for convenience hereinafter refer to Susanna A. Stinson as plaintiff.

On November 29, 1946, plaintiff and defendants went to an attorney in Clark and the deeds in question were prepared and delivered. Plaintiff conveyed by separate deeds a quarter section of land to each of the defendants and by another deed conveyed to them jointly a quarter section. These warranty deeds recited a consideration of "one dollar and other good and valuable consideration." As recited in a separate contract entered into by the parties, the consideration for the deeds and the inducement to the plaintiff to execute them was the promise of the defendants to support and care for the plaintiff for the remainder of her life. No mention was made in these instruments that the lands described therein and other tracts owned by the plaintiff were subject to mortgages.

The evidence shows that plaintiff, her sister Marguerite and brother Ed, who were also unmarried, resided for many years on the land involved in this action. The sister died in November, 1943, having made testamentary disposition of her title in the property to the surviving brother and sister. Before his death in October, 1946, the brother conveyed his title in the property to plaintiff. Defendants are nieces of the plaintiff. At the time of the execution of the deeds and contract for support, Mrs. Peterson was living on a farm in Clark county and Mrs. Mann was living in St. Paul, Minnesota. In October, 1946, plaintiff, then about 70 years of age, went to live with Mrs. Peterson and her family and so continued until January 15, 1947, when she left and did not thereafter live with either of the defendants. This action to cancel and set aside the deeds on the ground that defendants failed to perform their agreement followed.

Defendants filed an answer and counterclaim denying the affirmative allegations of the complaint and alleging that they were at all times able and willing to perform the

terms of the agreement and offered to do so. For further answer, they alleged that plaintiff warranted that the lands conveyed were free from encumbrances; that the defendant Alice G. Peterson had on deposit as trustee for plaintiff the sum of $6,577.88; and that this fund should be used to reduce the amount of the encumbrances against such land. They also alleged and claimed that they were entitled to compensation in the amount of $1,250 for services rendered to the plaintiff prior to the execution of the deeds.

The court found in part as follows: "That shortly prior to January 15th, 1947, the defendant, Alice G. Peterson, went to Watertown, South Dakota, to ascertain from the secretary of the National Farm Loan Association the amount that would have to be paid upon the mortgages * * * in order to induce the Federal Land Bank of Omaha and the Federal Farm Mortgage corporation to release the lands conveyed to the defendants from the liens of said mortgages, and on or about January 15th, 1947, the defendant, Alice G. Peterson, demanded, as a condition to further support of the plaintiff, that the said plaintiff use the cash on hand to reduce the mortgages so as to free said land so conveyed, or that she sell some of her remaining land for the same purpose. As a result of this demand, the plaintiff and the defendant, Alice G. Peterson, each became angry and as a result the plaintiff left the home of the defendant, Alice G. Peterson, on January 15th, 1947, and never returned. * * * That neither of the defendants have furnished any support whatever since January 15, 1947, and both of the said defendants positively conditioned the furnishing of any further support to the plaintiff upon the plaintiff discharging the mortgages described in paragraph 7 hereof as to the land conveyed to them and upon the said plaintiff coming to their homes to receive said support and both testified that they would not furnish support elsewhere."

Appellants insist that the evidence was insufficient to warrant cancellation of the deeds; that there was no failure of consideration or refusal on the part of defendants to perform the agreement; and that plaintiff left the Peterson home without fault of these appellants and has rendered performance on their part impossible.

It has been held in this state, with respect to conveyances made in consideration of a promise to support the grantor, that a failure by the grantee to perform will ordinarily justify a rescission and cancellation of the conveyance. Hegge v. Hegge, 44 S.D. 555, 184 N.W. 800; Peters v. Peters, 62 S.D. 563, 255 N.W. 466. This is the rule in the great majority of states. See annotations in 103 Am.St.Rep. 1039; 43 L.R.A., N.S., 918; 34 A.L.R. 136; 112 A.L.R. 670; and see also 12 C.J.S., Cancellation of Instruments, § 30, page 986. The support agreement need not be set out in the conveyance as a condition or covenant and the grantor need not establish a case for reformation because of mistake. In Hegge v. Hegge, supra, it was said, in substance, that it is not important whether an agreement to support, whatever its form, should be construed as imposing a condition subsequent; that where the relation of trust and confidence exists and the grantee repudiates or substantially fails to perform his agreement a cancellation where appropriate to the case may be decreed. This same view was well expressed in Bruer v. Bruer, 109 Minn. 260, 123 N.W. 813, 814, 28 L.R.A., N.S., 608: "There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for." A grantor, of course, who leaves the place of contemplated support or otherwise prevents performance on the part of the grantee without the latter being at fault will not be permitted to take advantage of the noncompletion of the agreement by securing equitable aid to cancel the conveyance. Scott v. Scott, 89 Wis. 93, 61 N.W. 286; Russell v. Robbins, 247 Ill. 510, 93 N.E. 324, 139 Am.St.Rep. 342; Moore v. Bugg's Ex'r., 274 Ky. 135, 118 S.W.2d 185; Fisher x. Sellers, 214 Ark. 635, 217 S.W.2d 331; see also annotation in 25 L.R.A., N.S., 932. If an agreement as in the instant case does not

expressly or by necessary implication specify the place where the support shall be provided the person entitled thereto may require support to be furnished at a place he may select if it can be supplied there without incurring unreasonable expense. Cummings v. Tolman, 292 Mass. 58, 197 N.E. 476, 101 A.L.R. 1457.

■ ■ The facts show that the relationship between the plaintiff and defendants, her nieces, had for many years been friendly and that plaintiff had reposed trust and confidence particularly in Mrs. Peterson who had assisted her in times of sickness and especially during the last illness of Ed Stinson and occasionally in the handling of her business affairs. When her brother died and she was left alone plaintiff, as before stated, went to live in the home of Mrs. Peterson. Negotiations with her nieces to provide for her comfort and support during the remainder of her life culminated in the transfer of the three quarter sections of land. It is the testimony of the defendants that plaintiff orally agreed to sell other land for the purpose of paying the mortgage indebtedness against the land conveyed and in this defendants were corroborated by other witnesses who testified that plaintiff had expressed to them such an intention. It is undisputed that there was no mention of the indebtedness at the time of the execution of the deeds and the support agreement. Notwithstanding the alleged agreement with respect to discharging the encumbrances, defendants took title by warranty deeds, containing no mention of the indebtedness. They now assert that in the absence of fraud and mistake the statutory covenants of warranty against encumbrances, SDC 51.1403, are controlling and that grantor having defaulted in discharging such liens and having voluntarily left the Peterson home and without cause there has been no refusal by them to furnish support and no breach of contract. Mrs. Mann's testimony regarding their agreement is positive and direct. She testified as follows:

"Q. In that conversation was there anything said by any of the parties, including Aunt Gustie, about the mortgage on the entire land? A. There was a mortgage on the entire land, we knew about that mortgage.

"Q. What was said about that? A. She said she was going to sell a quarter and an eighty and pay off the mortgage.

"Q. Sell a quarter and an eighty, did she speak about the land she was going to sell, was that outside of that that was deeded to you girls? A. It was land not deeded to us, that was another eighty and quarter that was not deeded to us. She was going to sell that and pay the mortgage upon Alice's land and my land." In answer to questions propounded by plaintiff's counsel, this witness testified:

"Q. In your answer you have asked that the court require Susanna Stinson to discharge the mortgage on the land that was deeded to you? A. That is right.

"Q. And you want the court to order Susanna Stinson to pay off the mortgage out of her other assets so that you will have your land clear? A. That is right.

"Q. In other words, you want her to pay off the mortgage? A. That is right.

"Q. And you don't feel under any obligation to support her except at your home? A. Yes in my home, that was the agreement.

"Q. You don't feel under any obligation to pay any money for the support of Susanna Stinson in Clark? A. No I tell you the agreement was made and if Aunt Gustie will come to my house I certainly will take good care of her.

"Q. But you insist she must also carry out the agreement and discharge the mortgage on the land so you will have it free and clear? A. That is right."

It appears from a resume of the evidence that there is a sharp conflict as to whether or not plaintiff agreed to pay the mortgage indebtedness and also with respect to the claim that plaintiff was told by Mrs. Peterson to leave if she refused to comply with her agreement. Plaintiff denied that the parties hereto had "talked about clearing the land" and insisted that prior to the transfers their conversations were to the effect that they would live on the land conveyed, work together and pay off the indebtedness. It is undisputed that there were discussions prior to the transfers as to moving on the land conveyed and repairing the buildings.

It appears from the testimony of the attorney who prepared the deeds that plaintiff stated at the time of their execution "that the Petersons she thought would move down on the home place in the fall."

The testimony of plaintiff to the effect that at the time of their quarrel on January 15, 1947, Mrs. Peterson demanded that plaintiff either make a payment from her cash resources upon the indebtedness sufficient in amount so as to clear the land conveyed to defendants or leave was directly contradicted by Mrs. Peterson. It is admitted that she obtained from the mortgagees a statement of the amount so required and that she discussed the content thereof with plaintiff. There was also discussion regarding plaintiff's bank deposit and the money held in trust by Mrs. Peterson. There is no contention that the particular mode of discharging the liens agreed upon was the application of the funds referred to. We cannot say that the testimony of the plaintiff was intrinsically improbable and no reason appears why the trial court could not believe her testimony.

We think the evidence sufficient to sustain the findings of the trial court. It is conflicting and the rule that such conflict is for the trial court to resolve is too long established to require citation. Upon a consideration of the record and the authorities, we find no error warranting reversal.

The judgment appealed from is affirmed.

All the Judges concur.